WM. LESER AND EMIL MOEGLING, *Partners as Wm. Leser & Co.*, v. SAMUEL GLASER AND ABE S. STRAUS, *Partners as Glaser, Straus & Co.*, AND ISAAC S. STRAUS AND HENRY MEYER, *Partners as Straus & Meyer.*

1. FRAUD; *Chattel Mortgage Void as Against Mortgagor's Creditors.* Where by the terms of a chattel mortgage the mortgagor is permitted to retain the possession of the mortgaged property, and to sell the same "in the regular course of trade at retail," and the mortgage does not contain any stipulation or provision with reference to what shall be done with the proceeds of such sales, and there is no agreement or understanding outside of the mortgage as to what shall be done with such proceeds, and the mortgagor is a near relative of the mortgagee, and the mortgaged property is worth much more than the mortgage debt, and there are other circumstances tending to showing that the mortgage was executed for the purpose of hindering, delaying and defrauding the creditors of the mortgagor, *held*, that such mortgage is void as against such creditors, and will sustain an attachment issued at the instance of one of such creditors against the mortgagor upon the ground of the fraudulent disposition of the mortgagor's property.

2. CHATTEL MORTGAGE, *When Void.* In case of a chattel mortgage, where the mortgagor is permitted to have the entire possession of the property with the power to sell the same and to dispose of the proceeds thereof as he may choose, the mortgage should generally be held to be void as against the mortgagor's creditors; and it should certainly be held to be void where nearly all the other facts of the case tend to show that the mortgage was executed for the purpose of hindering, delaying and defrauding the mortgagor's creditors.

3. MORTGAGOR, *When Agent of Mortgagee.* And in such case, where the mortgagor is permitted to retain the possession of the mortgaged property and to sell the same, he should be permitted to do so only as the agent or trustee of the mortgagee. To permit the mortgagor to act in any other capacity would tend to show bad faith and fraud, and just such bad faith and fraud as will sustain an attachment.

4. ATTACHMENT; *Chattel Mortgage—When Valid, When Void.* A chattel mortgage executed in good faith is always valid unless void for some technical reason, and whether void or valid it will probably never support an attachment; while on the other hand, a mortgage executed in bad faith, or to hinder, delay or defraud the mortgagor's creditors, is generally void, and will probably always sustain an attachment issued on the ground of such fraud. The fraud alone is sufficient to sustain the attachment, without reference to the validity or invalidity of the mortgage.

5. Practice *in Supreme Court.* Where the grounds for an order of attachment are stated in the subjunctive or in the alternative, and not positively or directly, but no point with reference to this manner of stating the grounds is presented to the court below, such point will not be considered by the supreme court.

*Error from Wyandotte District Court.*

Two actions against *Wm. Leser & Co.*, on accounts for goods sold and delivered to defendants — one action brought by *Glaser, Straus & Co.*, and the other by *Straus & Meyer.* In each action an order of attachment was issued and levied upon a stock of goods consisting of clothing, gentlemen's furnishing goods, etc., in the city of Wyandotte, and belonging to the defendants. On March 29, 1883, the defendants in each of these cases moved the court to dissolve the attachments. These motions coming on for hearing, May 5, 1883, before Hon. Wm. R. Wagstaff, district judge, at chambers, were consolidated, and both were heard at the same time and upon the same evidence. Said motions were overruled, and the attachments sustained; to which rulings the defendants in each case excepted. They bring the two cases to this court, and ask for a reversal of the foregoing rulings and orders. The facts are stated in the opinion.

*Hale & Miller,* for plaintiffs in error.

*Alden & McGrew,* and *Lathrop & Smith,* for defendants in error.

The opinion of the court was delivered by

Valentine, J.:. On March 19, 1883, two actions were commenced against William Leser and Emil Moegling, partners as Wm. Leser & Co. — one by Samuel Glaser and Abe S. Straus, partners as Glaser, Straus & Co., and the other by Isaac S. Straus and Henry Meyer, partners as Straus & Meyer. Each action was brought on an account for goods sold and delivered, and in each action an order of attachment was issued. The grounds stated in the affidavit for the order of attachment in each case are as follows:

"That the said defendants have assigned, removed, or dis-

posed of or are about to dispose of their property, or a part thereof, with the intent to defraud, hinder or delay their creditors, and are about to convert their property, or a part thereof, into money, for the purpose of placing it beyond the reach of their creditors."

On March 29, 1883, the defendants in each of these cases moved the court to dissolve the foregoing attachments. The motion in the case of Glaser, Straus & Co. reads as follows:

"And now come the above-named defendants, William Leser and Emil Moegling, and move the Honorable W. R. Wagstaff, judge of the above-named district court, at chambers, at the court house in the city of Wyandotte, Kansas, for an order dissolving the attachment in the above cause, for the reason that the affidavit for attachment in said cause is false and untrue, in law and in fact, and for the further reason that the said Emil Moegling and William Leser, or either of them, have not assigned, removed, or disposed of, nor are they about to dispose of their property, nor any part thereof, with intent to defraud, hinder or delay their creditors, or the creditors of either of them; and they, or either of them, are not about to convert their property, or any part thereof, into money, for the purpose of placing it beyond the reach of their creditors, or the creditors of either of them. Wherefore, said defendants ask that said attachment be dissolved, and the goods and chattels herein attached released."

The motion in the case of Straus & Meyer is substantially the same as that in the case of Glaser, Straus & Co., except that the motion in the case of Straus & Meyer contains the following additional words, to wit: "That the said attachment was obtained illegally and without sufficient grounds therefor." Each of these motions was supported by an affidavit, which was in substance the same as the motions. On May 5, 1883, these motions came on for hearing. They were consolidated, and both heard at the same time and upon the same evidence. They were heard on affidavits and other written evidence, and the court overruled the same, to which ruling the defendants in each case duly excepted; and they now, in a consolidated case, bring the two cases to this court and ask for a reversal of the foregoing rulings and orders of the district court.

It appears from the evidence introduced on the hearing of the motions, that the defendants, Leser and Moegling, formerly lived at Cincinnati, Ohio; that in August, 1882, they left that place and came to Wyandotte, Kansas, where they went into the clothing business; that on January 15, 1883, they executed and deposited ·in the office of the register of deeds of Wyandotte county, Kansas, two certain chattel mortgages upon their stock of goods, one to Carl Moegling, the father of the defendant Emil Moegling, for $1,527, and the other to Henrietta Leser, the sister of the defendant William Leser, for $1,500. These chattel mortgages were the same in form, and similar to other chattel mortgages, except that inferentially and by implication they permitted the mortgagors to retain the possession of the mortgaged property and to sell the same "in the regular course of trade at retail," and did not contain any stipulation or provision with reference to what should be done with the proceeds of such sales; and there was no agreement or understanding outside of the mortgages as to what should be done with such proceeds. The stipulations in each of these mortgages with reference to these matters read as follows:

"But if default be made in the performance of the conditions aforesaid, or if said parties of the first part shall attempt to sell the same, or any part thereof, except in the regular course of trade at retail, or to remove the same or any part thereof, out of the said county of Wyandotte, without the assent of the said party of the second part, her heirs, executors, administrators or assigns to such sale or removal, to be expressed in writing, or if said second party shall at any time deem her security unsafe, then it shall be lawful for said party of the second part, her heirs, executors, administrators or assigns to take immediate possession of the whole of said property, and to sell the same and apply the proceeds of such sale in the manner provided by law."

The plaintiffs below claim that the foregoing mortgages are fraudulent and void as against the creditors of the defendants, and that all the sales of goods made after the execution of such mortgages are also fraudulent as against such creditors. The facts upon which these claims are founded are as follows:

The plaintiffs claim that prior to the time when the defendants left Cincinnati and came to Wyandotte, Kansas, they had over three thousand dollars in money, which belonged to themselves; that even as early as July 25, 1882, the defendant Moegling deposited with the firm of Rindskoff, Sterne, Lauer & Co. the sum of $1,800, and took their note therefor with interest added, Moegling stating at the time that the money belonged to him, and was his own; that afterward the defendants purchased a large amount of goods from such firm, and in part payment therefor gave them the sum of $2,500 in money, and also, upon the recommendation of such firm, with which they were well acquainted and in whose employment they had previously been, purchased on credit large amounts of other goods from other firms, including the plaintiffs in these present actions. On January 15, 1883, and in Wyandotte county, Kansas, the defendants executed the aforesaid mortgages, to their relatives, who resided and were at that time in Cincinnati, Ohio. Under these mortgages, the mortgagors, as before stated, were permitted to continue in the possession of the mortgaged property and to sell and dispose of the same in the ordinary course of trade at retail without accounting for the proceeds, or applying the same in liquidation of the mortgage debts or of any other debts; and they did continue in the possession of the mortgaged property, and did continue to sell and dispose of the same as they had previously done, and without accounting for the proceeds, or applying them to the payment of any of their debts; and they also received goods from time to time, which they mingled with the mortgaged goods; and the entire business was conducted in the same manner as it had previously been conducted before the mortgages were executed. The goods were worth at the time over $7,000, and they were all mortgaged to their relatives for $3,027. About March 6, 1883, the creditors of the defendants had a meeting in Cincinnati, Ohio, at which meeting the defendant Leser was present, and the entire business of the defendants, with their assets and liabilities, was then and there discussed. A list of the liabilities of the defendants, approved by the

defendant Leser, was presented to the meeting, in which list the said mortgage debts did not appear, and at no time were the mortgage debts mentioned, and the creditors at that time had no knowledge of any such debts, or of the mortgages. The defendants' goods at Wyandotte were their only assets, and they were then estimated by Leser as being fully worth (even estimating them at less than their cost price) the sum of $7,200; and nothing was said about the goods being incumbered with mortgages or other liens. In consideration of the showing made, the creditors gave an extension of time to the defendants, and the defendants continued to sell their goods until March 19, 1883, when they were attached in the present actions. The goods were then worth only about $4,579.50. It would therefore seem that the defendants had in the meantime disposed of a large amount of goods; and yet they did not then or at any other time account for any of the proceeds of the sales.

On the other side, it is claimed by the defendants that the debts for which the mortgages were given were honest and *bona fide* debts. They claim that the debts were for borrowed money, loaned by Henrietta Leser, the sister of the defendant Leser, and by Carl Moegling, the father of the defendant Moegling, to start the defendants in business; and that they had no money with which to start in business except this which they borrowed from their relatives; and while these things may perhaps all be true, yet the evidence upon the subject is not entirely satisfactory. Besides the facts already stated, which tend to show that the defendants' claim is not true, there are still other facts tending in the same direction. The defendant Leser, a long time after the mortgage debt to Henrietta Leser had become due, stated that these mortgages would not be foreclosed except for the attachments levied upon the goods; and the testimony of Carl Moegling, the father of the defendant Moegling, is inconsistent, contradictory, and entirely unsatisfactory. There is considerable room for believing that the mortgages were without consideration, and therefore void as against creditors. But supposing the mortgages not

to be void for the want of consideration: are they still void for the reason that they were nevertheless executed for the purpose of hindering, delaying and defrauding creditors? They had the effect to tie up over $7,000 worth of property, and all the property of the defendants, to secure only $3,027, the smaller portion of the defendants' debts. The other debts amounted to $5,700; and at the creditors' meeting in Cincinnati, on March 6, 1883, it was represented, on the authority of the defendant Leser, that these debts — amounting to $5,700, and not including said mortgage debts — included all the debts and liabilities outstanding against the defendants; and all the defendants' property was tied up from their creditors, as aforesaid, with the power given to the defendants to sell it, but without any provision or understanding that any portion of the proceeds of the sale should be applied to the payment of any portion of the defendants' debts. The object of the defendants in executing the mortgages seems merely to have been to tie up their property in such a manner as to hinder and delay the majority of their creditors in the collection of their debts, and not merely to furnish a security for the due and prompt payment of the mortgage debts. As the defendant Leser said, the mortgages would not have been foreclosed except for the attachments; and except for the attachments the defendants would probably have been permitted to go on forever buying and selling goods in the same manner as they had previously done. This we think, under the facts and circumstances of this case, renders the mortgages void as against the creditors of the mortgagors; and void, not because of any mere technicality in any of the proceedings or transactions with which they are connected, but void in fact because the mortgages were executed for the purpose of hindering, delaying and defrauding the defendants' creditors. And being void for this reason, their execution will sustain an attachment issued on the ground of a fraudulent disposition of the mortgagors' property. In an able article, written by James O. Pierce, and published in the 17th American Law Review, 350, et seq., it is said:

"All cases in which a power of sale of the goods by the mortgagor is provided for, are, therefore, to be tested by the question whether such sales are to be made in his own behalf and at his own discretion, and with control of the proceeds reserved to him; or whether they are to be made solely in pursuance of the trust as a real one, that is, for the benefit of the grantee or mortgagee, and with provision that the proceeds shall be applied on his debt." (17 Am. Law Rev. 354.)

We think there is much reason for the distinction made by by Mr. Pierce. The first class of mortgages mentioned by him ought generally to be held void, while the other class of mortgages ought generally to be held valid. A chattel mortgage is not necessarily void because it contains a stipulation that the mortgagor may retain the possession of the mortgaged property, nor is it necessarily void because the parties have stipulated either in the mortgage or elsewhere that the mortgaged property may be sold by the mortgagor: provided that all is done in good faith, and the proceeds of the sale or sales are to be used only for the purpose of paying the mortgagor's debts and the necessary expenses for keeping the property and in converting the same into money. But where the mortgagor is permitted to have the entire possession of the property with the power to sell the same and to dispose of the proceeds thereof as he may choose, we think the mortgage should generally be held to be void as against the mortgagor's creditors; and it should certainly be held to be void where nearly all the other facts of the case tend to show that the mortgage was executed for the purpose of hindering, delaying and defrauding the mortgagor's creditors. Where the mortgagor is permitted to retain the posession of the mortgaged property and to sell the same, he should be permitted to do so only as the agent or trustee of the mortgagee. To permit the mortgagor to act in any other capacity would tend to show bad faith and fraud, and just such bad faith and fraud as will sustain an attachment.

The defendants seem to rely upon the case of *Frankhouser v. Ellett*, 22 Kas. 127, but we do not think that that case applies to this; and we further think that the doctrine enunciated in that case is entirely in harmony with the doctrine enun-

ciated in this case. We have no disposition to disturb the doctrine enunciated in that case, or to weaken its force or application, and in all cases where we think it applies we shall follow it; but we do not think that it applies to the facts of this case. In that case, the mortgage was executed in good faith, and the proceeds of the sales were to be applied in payment of the mortgage debt, with a small portion, less than reasonable compensation, for keeping the property and selling the same, etc., to be applied in part support of the mortgagor's family. A chattel mortgage executed in good faith is always valid, unless void for some technical reason, and whether void or valid it will probably never support an attachment; while, on the other hand, a mortgage executed in bad faith, or to hinder, delay or defraud the mortgagor's creditors, is generally void, and will probably always sustain an attachment issued on the ground of such fraud. The fraud alone is sufficient to sustain the attachment without reference to the validity or invalidity of the mortgage.

We think the mortgages executed in the present case are void for this last-mentioned reason; and when we speak of the mortgages as being void, we mean only as against the innocent and *bona fide* creditors of the mortgagor. The present mortgages are void in fact, because executed for the purpose of hindering, delaying and defrauding the defendants' creditors; and the mortgages themselves furnish much of the evidence to show it, and what they lack, if any is lacking, is furnished by the other facts in the case; and being executed for such a purpose, their execution will sustain the attachments issued and levied in the present case.

The plaintiffs in error, defendants below, also claim that the affidavits of the plaintiffs below are not sufficient, for the reason that the grounds for the orders of attachment were stated in the disjunctive and in the alternative, and not positively and directly. This point was not presented to the court below, and it will not be considered by this court.

It is also claimed by the plaintiffs in error, defendants below, that some illegal evidence was introduced on the hearing

of the motions.   This is perhaps true; but we do not think that the court below was misled by it, and therefore no material error was committed. .

The order of the court below sustaining the attachments and overruling the defendants' motions to dissolve the same will be affirmed.

All the Justices concurring.