J. J. RICHARDSON v. WILLIAM C. JONES *et al.*

No. 7994.

CHATTEL MORTGAGE—*Retention of Possession—Power to Sell—Validity.* A chattel mortgage on three stallions, kept for breeding purposes, in which it is provided that the mortgagor may retain possession of the mortgaged property until default, or the purchaser deems himself insecure, and which also contains the following provision: "Party of the first part has the privilege to sell one or all of said stallions, the proceeds of said sale to be applied in payment of said notes," where possession of the mortgaged property is retained by the mortgagor, is inoperative and void as to other creditors.

*Error from Shawnee District Court.*

THIS action was brought by J. J. Richardson, as plaintiff, on the bond of William C. Jones, as marshal of the United States for the district of Kansas, to recover the value of three stallions alleged to have been taken by him on or about the 14th day of January, 1889, and converted to his own use. It appears from the evidence that these stallions and another one were sold by Robert Holloway, who resided at Alexis, Ill., to Lee Stanford, who lived at Lyons, Kan., on the 16th day of February, 1887. A mortgage was given by Stanford to Holloway on the four stallions to secure the payment of $4,500, which was filed in the office of the register of deeds of Rice county on February 28, 1887. An affidavit to renew this mortgage was filed more than 30 days before the expiration of a year from the date of filing it. It is claimed by the plaintiff that on or about the 28th day of July, 1888, the three horses, to recover the value of which this suit was brought, were sold by Stanford to his brother-in-law, J. B. Chalfant, who thereupon gave to Stanford four promissory notes for $1,000 each, with 6 per

cent. interest, due in one, two, three and four years, respectively, and at the same time executed a chattel mortgage on the horses to secure the payment of the notes. The mortgage contains the following provision inserted immediately after the description of the property : '' Party of the first part has the privilege to sell one or all of said stallions, the proceeds of said sale to be applied in payment of said notes.'' It then contains the usual provisions to the effect that the mortgagor should retain possession of the property until default, or until the mortgagee deemed himself insecure. The plaintiff, who at that time resided at Leoti, in Wichita county, claims to have purchased the four promissory notes about August 8, 1888, and to have paid $2,100 in cash for them. On the 13th of August, 1888, an action was brought by Holloway against Stanford in the circuit court of the United States for the district of Kansas, to recover the amount due him for the horses. An order of attachment was issued, and, under it, the defendant Jones, as marshal, attached the four horses. On the 10th of January, 1889, judgment was rendered in favor of Holloway against Stanford for $4,413, and ordering the marshal to sell the attached property to satisfy the same. Afterward, on the 14th of January, 1889, the plaintiff demanded the three horses described in the chattel mortgage given by Stanford to Chalfant from the marshal, who refused to deliver them, but afterward, on the 31st of January, sold them under a special execution. The case was tried by a jury, and the verdict and judgment rendered in favor of the defendant. The plaintiff brings the case to this court, and alleges numerous errors. The opinion herein was filed March 7, 1896.

*Jetmore & Jetmore*, for plaintiff in error.

*Keeler, Welch & Hite*, and *Eugene Hagan*, for defendants in error.

The opinion of the court was delivered by

ALLEN, J. : It is only necessary to consider a single question presented by the record before us. The plaintiff's claim rests entirely on the chattel mortgage given by Chalfant to Stanford. It is not claimed that the plaintiff ever had possession of the property either before or after its seizure by the marshal. There is no direct testimony in the record as to the transaction between Chalfant and Stanford. The only evidence with reference to it is the promissory notes and the chattel mortgage, which were offered in evidence, and the testimony as to surrounding circumstances, and their declarations with reference to the matter. There is no evidence showing that any consideration other than the notes and mortgage passed from Chalfant to Stanford in payment for the horses. The mortgage under which the plaintiff claims contains a provision by which the mortgagor reserves the unrestricted right to sell the mortgaged property, followed by the statement that the proceeds are to be applied to the payment of the notes. There is no provision as to the manner in which it shall be so applied, nor does the instrument in express terms nor by fair implication make the mortgagor the agent of the mortgagee to receive the purchase-money. The right to sell would appear rather to be reserved to him as mortgagor, leaving the mortgagee no security after the mortgaged property is sold, but the mere personal liability of the mortgagor. It is insisted that this court has sustained the validity of chattel mort-

gages containing similar provisions. In the case of *Frankhouser v. Ellett*, 22 Kan. 127, it was held that a chattel mortgage might contain a valid stipulation for the retention of possession of the mortgaged property by the mortgagor ; and, further, that when it was so retained, and by an agreement outside the mortgage the mortgagor was permitted to dispose of the goods in the ordinary course of a retail business, and to use a portion of the proceeds in support of his family, paying the remainder in discharge of the mortgage debt, the transaction was not, as a matter of law, rendered fraudulent and void as against creditors, but would be upheld or condemned according as it was carried out in good faith or not. In that particular case the mortgage was held valid, the chief justice dissenting. In the case of *Leser v. Glaser*, 32 Kan. 546, a chattel mortgage was given which, by its terms, permitted the mortgagor to retain possession of the property, which was also a stock of merchandise, and to sell the same in the regular course of trade at retail. It was claimed that there was actual fraud. The mortgage was held void, not, however, solely because of its provisions, but under all of the testimony with reference to it. The correctness of the doctrine announced in the case of *Frankhouser v. Ellett*, supra, has been often questioned, but the case has never been overruled. The cases in which it has been applied have been of mortgages on stocks of merchandise purchased for sale at retail. In the case of such a mortgage, the retention of possession by the mortgagor would be of no benefit to him unless permitted to continue the sale of the property in the usual course of trade, and thus continue his business and realize the best obtainable price in the retail market. Where an arrangement is made between the mortgagor and the mortgagee, by which

the mortgagor acts in good faith strictly as the agent of the mortgagee, to sell the property at retail for his benefit, the transaction has been upheld by this court; and in some cases the court has gone so far as to uphold an arrangement by which the mortgagor was allowed to use a portion of the proceeds for his support. The view taken has been that the sale of the goods at a favorable price would necessarily entail expense, and that, where the mortgagor consented to and did act as the agent of the mortgagee in effecting the sale for a less compensation than it would have been necessary to pay to a stranger, the fact of making such an allowance could not be held conclusive proof of fraud. (*Hughes v. Shull*, 33 Kan. 127; *Howard v. Rohlfing*, 36 id. 361; *Whitson v. Griffis*, 39 id. 211; *Bliss v. Couch*, 46 id. 400; *Implement Co. v. Parlin & Orendorff Co.*, 51 id. 632; *Lorie v. Adams*, 51 id. 692.) In this case, as in that of *Leser v. Glaser*, supra, all of the facts disclosed by the record concerning the transaction between Stanford and Chalfant indicate that their purpose was to defraud. The plaintiff resided a long distance away from the parties to the transaction. The power to sell the mortgaged property is unrestricted as to price, as to the time of sale, as to the purchaser, and as to the mode of payment. The only provision that could possibly be construed into an agency is contained in the words, "the proceeds of sale to be applied in payment of said notes." This is nothing more than an agreement that after the sale of the mortgaged property the mortgagor will turn over to the mortgagee the proceeds. After the sale the mortgagee's security is gone; the title to the property has passed by virtue of the authority reserved to the mortgagor in the very instrument itself. The claim, then, of the mortgagee is nothing more than a

personal claim against his debtor. In this case the mortgaged property consisted of horses kept for breeding purposes. In order that the mortgagor might retain the beneficial use of them, it was not necessary, as in the case of a stock of merchandise kept for sale by a dealer, that he should be permitted to sell them. It was only necessary that he should be permitted to continue to use the horses for the purposes for which they were purchased. Instead, however, of reserving the right so to use them, he reserves the right to make an absolute sale of the whole mortgaged property in gross. The result of upholding such a mortgage as this is to place the property beyond the reach of all other creditors of the mortgagor, and make it a valid security, so far as their claims are concerned, while leaving it altogether optional with the mortgagor as to how long it shall remain as a security for his debt to the mortgagee. Whenever he sees fit to exercise his power to sell he can at once cancel the security. In order to uphold this as a valid mortgage we must extend the doctrine announced in *Frankhouser v. Ellett.* This we are unwilling to do. That case was an extreme one, and the doctrine announced in it is not to be extended to cases not clearly within the rules there declared. In this conclusion we are sustained by the great weight of authority. (Jones, Chat. Mortg. § 422.)

The transaction between Stanford and Chalfant rests for its validity on the presumption of good faith which is applied to the dealings of men. The evidence in the case is sufficient to overcome this presumption, and to establish its fraudulent character, without reference to the provision contained in the chattel mortgage ; and when this is added, no doubt is left of the fraudulent purpose of these parties. The

reservation of a right to sell the property by the mortgagor was sufficient at least to put the plaintiff in this case on inquiry as to the character of Chalfant's title, and therefore to leave him in no better position than the party under whom he claims. The plaintiff made no attempt to take the property into his possession from Chalfant, nor to recover it from the marshal, until after judgment had been rendered in the United States court ordering the property to be sold. He seems to have placed unusual reliance on the strength of his security, notwithstanding it contained a provision by which he might be deprived of it on any day. While, in the books, such mortgages are usually spoken of as fraudulent, possibly it would be more accurate to speak of them as inoperative, because they are contradictory in their terms, the conveyance of title being effectually defeated by the power reserved by the mortgagor to defeat the title and pass it to another.

The judgment of the trial court was right, and is affirmed.

All the Justices concurring.