W. E. BROOKS, *as Trustee, etc., Appellant,* v. THE BANK OF BEAVER CITY, *Appellee.*

No. 16,480.

### SYLLABUS BY THE COURT.

CHATTEL MORTGAGES — *Validity* — *Time of Execution* — *Bankruptcy*—*Voidable Preference.* An unrecorded chattel mortgage given by a merchant on his entire stock of goods, under which he was permitted to remain in possession of the goods, sell the same without limitation, replenish the stock whenever he might desire and appropriate the proceeds to his own use and benefit, without keeping the new goods apart from the others or paying anything on the indebtedness, and without accounting to the mortgagee for the sales made or the money derived from such sales, is a void instrument; and a later mortgage given by the merchant to the same creditor on the same stock of goods to secure the same debt, which was executed within four months prior to

the bankruptcy of the mortgagor and at a time when he was insolvent, and which was intended as a preference, and where the mortgagee knew that a preference was intended, constitutes a voidable preference under the national bankruptcy act.

Appeal from Reno district court; PETER J. GALLE, judge.   Opinion filed June 11, 1910.   Reversed.

*E. C. Wilcox*, for the appellant.

*W. G. Fairchild*, for the appellee; *H. S. Lewis*, of counsel.

The opinion of the court was delivered by

JOHNSTON, C. J.:  This action was brought by W. E. Brooks, as trustee of the estate of F. P. Madison, a bankrupt, against the Bank of Beaver City, to set aside a preference obtained through two mortgages executed by F. P. Madison to the bank, under which the bank took and appropriated mortgaged goods of the value of $1571.   The petition alleged that on March 15, 1907, Madison was engaged in a general merchandise business in Beaver City, and that upon that date a bankruptcy proceeding was instituted against him, on the ground that he had executed the two mortgages mentioned, one dated March 12, 1907, and the other March 15, 1907, while he was in an insolvent condition, and that it was done with the intent to prefer the bank over other creditors.   It was alleged that at the time of obtaining the mortgages and the possession of the goods the bank and its officers knew that Madison was insolvent and intended to prefer the bank over others of his creditors.   Later, and on April 19, 1907, he was duly declared a bankrupt.   In its answer the bank alleged that on September 13, 1906, it made a loan to Madison of $1017.42, and to secure the payment of the debt took a chattel mortgage on his stock of goods; that on March 12, 1907, the whole of the debt and interest being due, the bank obtained a new note for the amount of the debt, and also another

chattel mortgage from Madison, under which it took possession of the stock, and that upon the 15th day of March, 1907, still another chattel mortgage was executed for the same indebtedness. It further alleged that both of the mortgages of March, 1907, were renewals of the prior mortgage of September, 1906, and that the original mortgage of 1906 was given for a present consideration, more than four months before the bankruptcy proceedings were begun, and was not given in fraud of the bankruptcy act.

According to the testimony the bank actually loaned money to Madison in 1906 and took a mortgage on his stock of goods, but this mortgage was never recorded, and the bank did not take possession of the goods under it. On the other hand, it allowed Madison to continue in possession of the goods, sell them in the usual course of trade, buy other goods to replenish the stock, without keeping the new goods separate from those mortgaged and without accounting to the bank for the proceeds of the sales made. Madison testified that between September 13, 1906, and the execution of the mortgage on March 12, 1907, he bought goods at wholesale houses, put them in his store and carried on a regular retail business, replenishing his stock whenever he saw fit to do so, and using the money derived from the sales in his business and in living expenses as he had done prior to the execution of the mortgages. He stated that the stock was kept up so that it was of about the same value as when the first mortgage was given, but that it did not consist of the same goods, and that it was impossible to tell how many of the mortgaged goods remained in stock when the mortgage of March 12, 1907, was given. It also appears that prior to the giving of the mortgages of March, 1907, Madison was in fact insolvent, and that on March 12, 1907, he sent a message to the cashier of the bank telling that officer of his financial condition; that he was unable to run the store any longer; that a representative of one of

his creditors was then in town looking after its claim, and he advised the cashier to take steps to protect the bank. Acting on this information the bank procured Madison to make a note for the debt, and to execute a mortgage on the entire stock of goods, after which the bank took possession. For some reason the bank took another mortgage on March 15, 1907, which was substantially the same as the one given three days before. At the end of the trial the court refused to set aside the mortgages, and gave judgment in favor of the bank.

The mortgages of 1907, taken by themselves, constituted voidable preferences. They were given and recorded within four months before Madison was adjudged a bankrupt, for a preëxisting debt to the bank, whose officers knew of Madison's insolvency and that the mortgages were intended as preferences. The bank took possession of the goods under the mortgages with full knowledge of the financial condition of Madison, and upon his suggestion that he could not meet his obligations and that therefore the bank should take the mortgages and the goods to meet its claim. (National Bankruptcy Act of 1898, §§ 60, 67e, 30 U. S. Stat. at L., ch. 541; *Sherman v. Luckhardt*, 67 Kan. 682; Brandenburg, Bankr., 3d ed., § 962; Collier, Bankr., 7th ed., p. 666.)

That the mortgages of March, 1907, were acts of bankruptcy and preferences was decided in the bankruptcy proceeding, but apart from that adjudication it is clear from the evidence that, considered by themselves, they came within the condemnation of the bankruptcy act. It is contended, however, that these mortgages were but renewals of the mortgage of September 13, 1906, which, as we have seen, was given to secure the payment of a loan made at that time. This mortgage, it appears, was never recorded, and the bank did not take possession of the goods under it. On the matter of recording, it is contended in behalf of the bank

that under the law of Oklahoma the recording of the mortgage was not required and therefore not essential to the validity of the mortgage. The trustee contends that the law of Oklahoma as it existed at the time the transactions were had and when this action was begun was to the effect that an unrecorded mortgage was void. This appears to have been the interpretation given the mortgage provision by the supreme court of Oklahoma until the territory became a part of the state of Oklahoma, but since the territory of Oklahoma and Indian Territory were organized into a state the supreme court of the state has adopted the rule which prevailed in Indian Territory and decided that an unrecorded mortgage is not invalid. It is unnecessary, however, to determine which rule of law shall be applied to the transactions involved in this proceeding. Apart from the omission to record the mortgage of 1906, it is clear that it was not a valid lien. It was no more than an ineffectual attempt to acquire a lien. Nothing was done by the bank by which creditors and those dealing with Madison could ascertain that the bank claimed a lien on the goods. There was neither actual nor constructive possession of the goods by the bank. The ownership and control by Madison was not disturbed, and no limitations were placed upon his use or appropriation of the proceeds. Although it contained such a provision as is usual in chattel mortgages, to the effect that no part of the mortgaged property should be sold or disposed of without the consent of the mortgagee, it provided that Madison should retain possession and control and have the ordinary use and benefit of the property, and it was the understanding between the parties that the mortgagor should sell at will and buy again as he might desire. He was not required to account for what was sold nor apply the proceeds on the debt owed to the bank. No provision was made that goods purchased after the mortgage was given should be kept apart from those that were mortgaged.

The cashier of the bank frankly testified that he knew Madison was selling the goods, replenishing the stock, applying nothing on his indebtedness, and that the plan Madison was pursuing was satisfactory to the bank.

In *Implement Co. v. Schultz,* 45 Kan. 52, the mortgagor was allowed to continue in possession of a stock of goods, selling them as before, with the knowledge and acquiescence of the mortgagees, having the same control over the goods as he had before the mortgage was executed, and applying the proceeds at his own discretion, and it was held that such a mortgage is as a matter of law fraudulent and void. In a later case, where a mortgagor was permitted to sell the mortgaged property without limitation, and no provision was made as to what should be done with the proceeds, the mortgage was held to be void as against creditors. (*Rathbun v. Berry,* 49 Kan. 735.) In Oklahoma, where this transaction took place, the supreme court held that an arrangement which gave a mortgagor possession of a stock of goods with the right to convert the goods into money and appropriate the money as he pleased was a nullity. It was there said:

"Such a privilege is against the policy of the law, and wherever stocks of merchandise have thus been mortgaged and the privilege of appropriation by the mortgagor to his own use has been thus permitted by the terms of the mortgage, the decisions of the courts of this country have condemned them with almost entire unanimity, and the instrument itself has been as uniformly held to be fraudulent and void as a matter of law, irrespective of the question as to whether any fraud or fraudulent intent did, in fact, exist." (*Little Company and Horsfall v. Burnham, Hanna, Munger & Co.,* 5 Okla. 283, 293.)

The arrangement by which the mortgagors were allowed to sell the goods as their own, without accounting to anyone for them, and to appropriate the money derived from the sales to their own purposes, is incompatible with the purpose of a mortgage lien. As was said in *Robinson v. Elliott,* 89 U. S. (22 Wall.) 513,

Brooks v. Bank.

526, "a mortgage which, in its very terms, contemplates such results, besides being no security to the mortgagees, operates in the most effectual manner to ward off other creditors; and where the instrument on its face shows that the legal effect of it is to delay creditors, the law imputes to it a fraudulent purpose." (See, also, *Means v. Dowd,* 128 U. S. 273; *Blakeslee v. Rossman,* 43 Wis. 116; *Lang v. Lee, &c.,* 3 Rand. [Va.] 410.)

The conceded facts as to the plans and purposes of Madison and the bank are sufficient to show that the mortgage was without validity, and even the recording of the same would not have cured the illegality of the attempted transfer. The taking of possession of the goods by the bank in March, 1907, did not validate the mortgage of 1906. It appears, however, that possession was not taken under that mortgage, nor until after the execution of the one dated March 12, 1907, and it, as we have seen, was executed only a few days before the bankruptcy proceeding was begun. The undisputed facts show clearly enough that the taking of possession of the goods by the bank under the mortgages constituted a voidable preference. (*Shale v. Bank,* post.)

The judgment is reversed and the cause remanded, with the direction to enter judgment in favor of appellant.