THE FIRST NATIONAL BANK OF SMITH CENTER, *Appellant*, v. M. W. HARDMAN et al., *Appellees*.

No. 17,904.

SYLLABUS BY THE COURT.

1. PROMISSORY NOTE—*Chattel Mortgage — Sales by Mortgagor without Accounting—Liability of Surety*. Where a surety on a note (who was induced to become such by the assurance of the payee that its payment was to be fully secured by a chattel mortgage upon a stock of merchandise) intended when he signed the note that the mortgagor should be permitted to remain in possession of the goods, and to make sales in the usual course of business, without applying the proceeds to the debt, and this course was followed, the mortgage was thereby rendered invalid by conduct in which the surety participated, and he can not escape liability on the note by showing that without his knowledge the mortgage had been withheld from record, and that it had been held to be void as to creditors by a court of competent jurisdiction, as a result of which the note remained unpaid.

2. SALE OF MORTGAGED GOODS — *Finding of Jury Construed*. Where the jury are asked whether it was the intention that a mortgagor of a stock of merchandise should remain in possession, selling the goods and using the proceeds as he saw fit, and answer: "Yes; to carry on in regular way," this reply is to be construed as meaning that the intention was that the mortgagor was to carry on the business in the usual way, selling the goods and disposing of the proceeds as he saw fit; and this notwithstanding such construction results in a conflict between the finding and the general verdict.

Bank v. Hardman.

Appeal from Phillips district court. Opinion filed April 12, 1913. Reversed.

*E. S. Rice,* of Smith Center, and *R. Frank Stinson,* of Phillipsburg, for the appellant.

*Clad Hamilton, Clay Hamilton,* both of Topeka, *N. B. McCormick,* and *T. F. Countryman,* both of Phillipsburg, for the appellees.

The opinion of the court was delivered by

MASON, J.: On August 21, 1907, a note for $3000, payable to W. D. Womer and I. H. Rogers, was executed by C. E. Nelson as principal and M. W. Hardman and H. A. Selbe as sureties. On July 9, 1909, the First National Bank of Smith Center brought action against the sureties upon the note, claiming to be an indorsee for value before maturity. A jury trial resulted in a verdict and judgment for the defendants, and the plaintiff appeals.

The defendants' answer raised an issue as to the plaintiff's being an innocent purchaser, but our decision does not turn on this matter, and further reference to it may be omitted. The defendants also pleaded that the payees, Womer and Rogers, were acting in the transaction for the First National Bank of Phillipsburg, which was the real owner of the note. This allegation is important only as explanatory of the relations of the parties. The defense pleaded was that the defendants had been released from liability by virtue of the following facts:

They were induced to sign the note by representations, participated in by the real and nominal payees, that they incurred no risk in doing so, because it was to be fully secured by a chattel mortgage on a stock of merchandise owned by Nelson, the principal; such a mortgage was executed at the time, but the owners of the note withheld it from record, by agreement with the mortgagee, in order to give him a false appearance

of good credit, and for that reason it was adjudged void in bankruptcy proceedings, which were instituted against Nelson December 9, 1907, and to which Womer and Rogers and the Phillipsburg bank were parties.

Many questions are discussed in the briefs, but the view taken of one of them renders a consideration of the others unnecessary. The plaintiff contends, and we regard the contention as well founded, that certain facts established by the special findings require a judgment in its favor. By an instruction, numbered 17, the court told the jury, in substance, that (assuming a loss of the mortgage security to have resulted, and leaving out of account the plaintiff's claim of being an innocent purchaser) a complete defense was established if these facts had been proved: the owners of the note agreed with the mortgagee that the mortgage should be withheld from record and that he should be allowed to hold himself out as the absolute owner of the goods; this agreement was carried out, and he was permitted to sell a part of the goods and use the proceeds as he saw fit. To this was added:

"In connection with instruction numbered 17 and as a part thereof I will say to you that if the said defendants intended and understood, at the time of the execution of said note, that said mortgage given to secure the same was to be withheld from record, or if they intended or understood that the said C. E. Nelson was to remain in possession of the property mortgaged, and be permitted to sell the same, or any part thereof, and to use the proceeds of such sale as he saw fit, then in such case the defendants would not be entitled to be released from the payment of the said note, because thereof."

The jury found that after the execution of the mortgage Nelson remained in possession of the goods, making sales in the ordinary course of business, without applying the proceeds to the payment of the note. They were asked: "At the time of signing the said note, did the said M. W. Hardman intend that the said C. E.

Nelson, mortgagor, should remain in possession of said mortgaged goods, and sell and dispose of same, or parts of same, as he saw fit, and use proceeds as he saw fit?" They answered: "Yes; to carry on in regular way." They returned the same answer to the same question with respect to H. A. Selbe, the other surety. Treating this answer as an unqualified affirmative it is fatal to the defense under the instruction quoted and under the law as we view it. Where a chattel mortgage is executed upon a stock of merchandise, and the mortgagor by consent of the mortgagee, whether expressed in writing or not, makes sales in the ordinary course of business, without applying any of the proceeds to the payment of the mortgage debt, the transaction amounts to a legal fraud upon creditors, and the instrument is void as to them. While a different view is taken in some jurisdictions, this is the settled doctrine in Kansas. (*Implement Co. v. Schultz*, 45 Kan. 52, 25 Pac. 625; *Smith v. Epley*, 55 Kan. 71, 39 Pac. 1016. See, also, other cases cited in 6 Cyc. 1108, and *Brooks v. Bank*, 82 Kan. 597, 109 Pac. 409.) Whether the mortgage is recorded or not can make no difference with the application of this rule. If here the mortgagor made sales of the mortgaged property without reducing the mortgage debt, and this was in accordance with the intention of the mortgagees, the arrangement made the mortgage void as to other creditors. If the sureties participated in this intention they can not claim a discharge by reason of the mortgage being thereby rendered invalid. And if it was rendered invalid for that reason they were not injured by the failure to record the mortgage, and are not entitled to a release on that account. Conceding that they acted in the best of faith, without the slightest thought that creditors were to be delayed or defrauded, if they understood that the mortgagor was to make sales of the goods without reducing the debt, they knew a course was to be followed the natural consequence of which was to impair the safety

of creditors, and which the law therefore regards as fatal to the enforcement of the mortgage.

It is argued in behalf of the sureties, however, that the affirmative reply of the jury is qualified by the addition of the words, "to carry on in regular way"; that the entire answer should be construed so as to uphold the general verdict, if such construction is possible; that in view of this rule of interpretation the jury should be deemed to have used the word "regular" in the sense of "proper" or "legal," their meaning being that the intention of the surety was that the mortgagee should sell goods and dispose of the proceeds in such way as the law would permit—under such an arrangement as would be consistent with the validity of the mortgage. We are unable to accept this view. The natural meaning of the jury's answer seems to be that the business was to be carried on in the regular way, that is, the usual way—that sales were to be made at retail in the ordinary course of business. The question was made very specific. It required the jury to say whether the intention was for the mortgagor to use the proceeds of the sales of goods as he saw fit. The affirmative answer is inconsistent with the theory that the proceeds were required to be applied to the reduction of the mortgage debt. Moreover, this reading of the answer accords with what the sureties said upon the stand. The following is a literal transcript of the testimony of one of them upon the subject, that of the other being substantially the same:

"Q. You say you were going to help Dr. Nelson get this money; what for? A. He told me he wanted to buy George James out.

"Q. What was he going to do after he bought George out? A. Run the drug store, I suppose.

"Q. You wanted to help him raise the money? A. Yes, sir.

"Q. That was your intention when you loaned him the money and signed the note? A. Yes, sir.

Bank v. Hardman.

"Q. What did you expect him to do with the drug store? A. I expected him to run it.

"Q. Buy and sell goods? A. Yes, sir.

"Q. Did n't you expect this note to be paid—you did not expect this note to be paid until it was due? A. No, sir.

"Q. You did not expect him to apply any of the proceeds from the sale of that stock to the payment of the note? A. No, sir.

"Q. You expected him to do as he pleased, buy and sell goods and use the money where it was best to be used? A. Yes, sir."

The precise grounds upon which the mortgage was set aside in the bankruptcy proceedings are not shown. From a statement of an admission made by the plaintiff, which was seemingly acquiesced in by the defendants, it appears that the fact that the mortgagor was allowed to sell goods without accounting for the proceeds was at least one of the reasons. Inasmuch as under the facts here found the mortgage was invalid apart from any question of notice or recording, the presumption must be that it was held void for reasons that would have been sufficient even if it had been recorded. As, according to the findings, the sureties were not injured by the omission to record the mortgage, and are not in a position to complain of its invalidity by reason of the manner in which the mortgagor was allowed to conduct the business, they have failed to establish a defense.

The judgment is reversed and the cause remanded with directions to render judgment on the findings for the plaintiff.

WEST, J., not sitting.