No. 28,479.

THOMAS E. JOYCE, as Trustee in Bankruptcy of the Estate of Samuel Leven, a Bankrupt, *Appellant*, v. THE ARMOURDALE STATE BANK, *Appellee.*

(274 Pac. 200.)

Opinion filed February 9, 1929.

*Melvin E. Buck*, of Kansas City, for the appellant; *Thomas E. Joyce*, of Kansas City, *pro se.*

*J. H. Brady* and *T. F. Railsback*, both of Kansas City, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: In this case the trustee of a merchant adjudged a bankrupt seeks to set aside a chattel mortgage given by the merchant on his stock of goods to the defendant bank and recover the goods from the bank, or their value, for the benefit of other creditors, because the requirements of the bulk-sales law were not observed, either at the time of the execution of the mortgage or when the goods were delivered thereunder to the bank. The issues were joined and tried to the court upon an agreed statement of facts,

and judgment was rendered for the defendant, from which the plaintiff appeals.

In addition to the usual and ordinary provisions contained in a chattel mortgage was the following paragraph:

"The power, right and privilege is given to the parties of the first part to continue said businesses in the two stores respectively mentioned in the usual course of merchandising and to sell from the respective stocks of furniture, household goods, stoves, etc., both new and secondhand, which are covered by this mortgage, and parties of the first part are required hereby from time to time as sales are made from said stocks to replenish the same with other similar articles of merchandise and to maintain such stocks of merchandise in said stores in their present standard of quality and quantity, and the privilege of making sales therefrom shall not be construed in any way to release this mortgage, but the parties of the first part shall strictly account to party of the second part not less frequently than once each week for the sales so made, and shall report at the time of such accounting the manner in which said stock has been replenished to cover said sales, and this chattel mortgage shall be construed to cover all merchandise obtained, purchased or procured by the first parties to replenish said stock and which shall become a part of the merchandise or stock in either of said stores during the term of this mortgage."

The mortgage was made to secure a loan made by the bank to the merchant. Seven months after it was made and filed for record the merchant defaulted in his payments and, upon request of the bank, he surrendered and delivered possession of all the fixtures and all the goods then on hand. Five months after such surrender and delivery of the goods to the defendant bank the merchant was adjudged a bankrupt and plaintiff was appointed and qualified as trustee.

The stipulation shows there were a number of creditors of the merchant when the mortgage was executed, that they continued as such, and that they and others were creditors when bankruptcy proceedings were instituted twelve months later. There is nothing in the agreed statement of facts to suggest that the chattel mortgage was a shift or devise to effect a sale in another name, but it must be considered as a *bona fide* transaction in a businesslike way of actually borrowing money from the bank and giving a chattel mortgage on the stock of merchandise to secure the payment of the same.

The section of the bulk-sales law of this state to which reference is made is as follows:

"The sale or disposal of any part or the whole of a stock of merchandise or the fixtures pertaining thereto, otherwise than in the ordinary course of his trade or business, shall be void as against the creditors of the seller, unless

the purchaser receives from the seller a list of names and addresses of the creditors of the seller certified by the seller under oath to be a complete and accurate list of his creditors and unless the purchaser shall, at least seven days before taking possession of the property, or before paying therefor, notify in person or by registered mail, every creditor whose name and address is stated in said list, or of whom he has knowledge of the proposed sale." (R. S. 58-101.)

It is stipulated that nothing was done or attempted to be done in connection with the giving of the chattel mortgage or the delivery and acceptance of the goods thereunder seven months later to comply with the provisions and requirements of the bulk-sales act, it being contended by the bank that the act does not apply either to the giving of such a mortgage or the delivery of the mortgaged goods thereunder. Three Kansas decisions are cited and discussed in this connection as more or less applicable to the question now under consideration. The case of *Bank v. Davis,* 103 Kan. 672, 175 Pac. 972, was where a bill of sale was given for a stock of merchandise, providing for a return of the excess, if any, above the indebtedness, and was accompanied by an immediate delivery of the goods. As to the immediate delivery the case is quite different from the one at bar, but aside from that feature the court likened the bill of sale with the agreement to return to a chattel mortgage and said in the opinion:

"If, however, the bill of sale is deemed to have been in legal contemplation a chattel mortgage, we still regard it as constituting a 'sale or disposal' of the stock within the meaning of the statute. If the owner of a stock of merchandise, while allowed to sell it only upon notice to his creditors, could mortgage it effectively without such notice, the evasion of the statute would be so easy as to deprive it of all practical force. In this state the title to chattels passes by the execution of a mortgage (Gen. Stat. 1915, § 6501), which therefore amounts to a sale, or at least to a disposal. This view finds support in decisions elsewhere. (*Baker v. Nipper,* 198 S. W. 596 [Tex. Civ. App. 1917]; *Semmes v. Stecher Brewing Co.,* 195 Mo. App. 621.) In some jurisdictions, what might seem to be a contrary conclusion is reached, but this is by reason of local statutes under which the mortgagor of chattels continues to be their owner." (p. 674.)

Another case on the subject is the case of *Jewelry Co. v. Maddock,* 115 Kan. 108, 222 Pac. 113, where a jeweler pledged a quantity of diamonds from his stock to one of his creditors and delivered them to him at once, about which litigation followed. The conclusion of the court was expressed in the syllabus as follows:

"A pledge of a part of a stock of merchandise by a merchant to one of his

creditors to secure the payment of a debt owed by the merchant to the creditor is a disposal of the goods pledged within the meaning of the bulk-sales law."

The latest expression is in the case of *Faeth Co. v. Bressie,* 125 Kan. 425, 264 Pac. 1077, where the court reviews the former decisions on the subject and applies them to the facts in that case, which were different from those in this case and the former cases in that the plaintiff became a creditor after the interest of the mortgagee accrued.

. The case of *Oil Co. v. Consolidated Companies,* 110 Kan. 245, 203 Pac. 915, gives the court's attitude toward the bulk-sales statute, describing it as a remedial statute and stating how it should be construed as follows:

"The bulk-sales law is remedial. It is designed to frustrate fraud upon creditors, and for that reason it is to be liberally construed. It was the duty of the defendants to hold within their control enough of the price to satisfy plaintiff's claim for payment." (p. 247.)

In another recent case, where one creditor was seeking to obtain a priority over other creditors by attempting to get judgment in justice court earlier than other creditors and where the bulk-sales law was thought to apply, the court said:

"The purpose of the bulk-sales law was that goods of debtors sold in bulk without compliance with its terms should be treated as a trust fund for the benefit of all creditors and to hold the purchaser who illegally obtained possession thereof as a trustee for such creditors." (*Wholesale Grocery v. Milling Co.,* 116 Kan. 534, syl. ¶ 2, 227 Pac. 374.)

The learned counsel for the appellee have furnished us with an exhaustive brief on this subject covering textbooks, annotations and decisions from many other states, in which our decision in the Davis case, *supra,* is not followed, and some of them summarize by saying that Kansas and Texas courts are almost alone in their leaning toward the view that a chattel mortgage and a delivery thereunder may be such a sale or disposal as was intended to be covered by the requirements of the bulk-sales law. A review of these cases reveals in most instances—not all—some differences in the verbiage of the statute on chattel mortgages and bulk sales. We think now, as was said by Justice Mason in the Davis case, *supra,* that "in some jurisdictions, what might seem to be a contrary conclusion is reached, but this is by reason of local statutes under which the mortgagor of chattels continues to be their owner." (p. 674.)

In this case we are only concerned as to the ownership or change

of ownership at the time the merchandise was surrendered and delivered by the merchant to the bank under the mortgage, seven months after the loan was made and the execution and filing of the mortgage for record. Was that a change of ownership, a sale or disposal as expressed in the act? We think it was. When the goods were surrendered or delivered under the mortgage the situation became the same as in the two cases above cited, where the delivery was an immediate one. Of course, the contract was made seven months earlier but now, by virtue of that contract, there is a disposal of the goods. The mortgagor is no longer the owner of the merchandise. After surrender and delivery thereof he could not maintain replevin or other action to recover the same. He had owned them, and certainly did own them when he executed the mortgage. Now he does not, but the mortgagee now owns them. Whether the transaction can, strictly speaking, be called a sale may be subject to discussion, but certainly this is a disposal. Webster defines disposal as "the transference of anything into new hands; the alienation or parting with . . . property." There is no contention that this parting with the merchandise by the mortgagor when he delivered it to the bank was "otherwise than in the ordinary course of his trade or business." We therefore conclude that the surrender and delivery of the stock of merchandise under the mortgage by the mortgagor to the mortgagee was such a sale or disposal of the merchandise as was intended to be covered by the provision and requirements of the bulk-sales law, and where there was no compliance with such requirements at the time of the execution of the mortgage or the surrender or delivery of the merchandise, the sale or disposal is void as against creditors of the mortgagor.

Much is said in the briefs about the application of the bulk-sales law to the giving of an ordinary chattel mortgage and the rights of the parties thereunder. In the first place the facts in this case do not stop with the act of giving the mortgage, but before this action was commenced and before the plaintiff was appointed to represent the creditors of the mortgagor, the mortgagor had disposed of the merchandise. Whether or not there was a sale or disposal by the act of giving the mortgage becomes immaterial when there was an absolute disposal by the delivery before the action was commenced. Again, the briefs refer frequently to the giving of an "ordinary

mortgage." A mortgage on a stock of merchandise can hardly be called an ordinary mortgage under the many decisions in this state with reference to the validity of such mortgages. The ordinary mortgage on a stock of goods, without some special arrangement either in it or in connection with it for the sale of the merchandise in the ordinary course of business, has by our decisions been generally held to be void as to creditors. The special paragraph above quoted as contained in the mortgage in this case was doubtless inserted to take this mortgage out of the ordinary class. See *Leser & Co. v. Glaser, Straus & Co.*, 32 Kan. 546, 4 Pac. 1026; *Implement Co. v. Schultz*, 45 Kan. 52, 25 Pac. 625; *Gleason v. Wilson*, 48 Kan. 500, 29 Pac. 698; *Butler v. Case*, 53 Kan. 262, 36 Pac. 330; *Smith v. Epley*, 55 Kan. 71, 39 Pac. 1016; *Richardson v. Jones*, 56 Kan. 501, 43 Pac. 1127; *Humphrey v. Mayfield*, 63 Kan. 208, 65 Pac. 234; *Brooks v. Bank*, 82 Kan. 597, 109 Pac. 409; and *Bank v. Hardman*, 89 Kan. 212, 131 Pac. 632.

The judgment is reversed and the cause is remanded with instructions to render judgment for the plaintiff in accordance with the views herein expressed.