In the Matter of William D. and Shirley D. KNOLLHOFF, d/b/a Bill's Appliance Company, Bankrupts.

No. 7227–B–2.

United States District Court
D. Kansas.

Jan. 7, 1965.

James P. Johnston, Wichita, Kan., for bankrupts.

Wilbur Geeding, Wichita, Kan., for Orlin Wagner, trustee.

Kenneth Hiebsch, Wichita, Kan., for petitioner creditor in petition for review.

WESLEY E. BROWN, District Judge.

This bankruptcy matter is before the court on certificate of the referee on petitions for review timely filed by the trustee.

The referee, by his "Findings, Opinion & Order" dated June 24, 1964, granted the reclamation petitions of General Electric Credit Corporation [General Electric] and Wilson Distributing Company [Wilson]. Trustee's petition for review asserts that as to these two reclamation petitioners, the referee's "findings, conclusions and orders" were erroneously entered for the following reasons:

A. they are not supported by substantial competent evidence;

B. they are contrary to the evidence;

C. the referee disregarded certain substantial competent evidence adduced on behalf of the trustee;

D. the referee erroneously construed certain evidence as constituting an accounting within the requirements of law;

E. the referee failed to consider certain designated documentary evidence adduced on behalf of the trustee.

The trustee in its brief filed in this court on September 9, 1964 asserts that grounds "D" and "E" supra are the chief complaints of trustee. Trustee further contends that these complaints "are based upon error which emanates primarily from a clear misapplication of the conclusion of the Honorable E. R. Sloan in a memorandum opinion in The Matter of James A. Murray, Case No. 3116–B–4" with respect to accounting requirements.

The two successful reclamation petitioners have challenged the sufficiency of trustee's petition for review as not properly setting forth the alleged errors of which complaint is made. Reclamation petitioners contend that trustee's complaints amount to a general attack on the referee's findings of fact because the assignments of error fail to state how and in what manner the evidence fails to support the findings of the referee.

We feel the petition for review, read in light of trustee's brief and the referee's certificate sufficiently states the errors of which complaint is made and the question of law, so that we may review the matter.

We need not go into detail in stating that findings of a referee are binding both on this court and on a court of appeals unless clearly erroneous. E. g., Washington v. Houston Lumber Company, 310 F.2d 881 (10th Cir. 1962). We adopt the referee's findings and his ultimate conclusions reached from those facts with respect to the lien claimants' good faith.

Briefly, the facts show that reclamation petitioners entered into various financing arrangements with bankrupt involving trust receipts and conditional sales contracts. The conditions listed in the recorded security instruments were never carried out by the parties; instead a substituted course of conduct was realized with full acquiescence of all parties. After Knollhoff was voluntarily adjudicated a bankrupt, reclama-

tion petitioners General Electric and Wilson were successful in asserting the validity of their security instruments in the face of trustee's contention that because the bankrupt was allowed full control of the mortgaged goods and was allowed to sell them as his own to the retail public, the security devices were void as against creditors.

The referee's certificate presents this question:

"In both cases, the lien claimant consented to sales of the merchandise in question by the bankrupt to the general public and to his handling of the proceeds therefrom in a manner other than provided by the recorded security instrument. Thus, the question presented is whether, under the respective actual courses of dealing between the bankrupt and the lien claimant, the latter permitted the bankrupt to exercise such unfettered control over the merchandise and the sales proceeds as to render the asserted lien fraudulent in law and void as to the bankrupt's creditors."

 While the instruments here involved are conditional sales contracts and trust receipts, under Kansas law they are subject to that body of case law known locally as "the chattel mortgage cases" or the "stock of goods mortgage cases." This is true because, under the facts here applicable, the conditional sales contracts and trust receipts were essentially security devices. See, e. g., Habegger v. Skalla, 140 Kan. 166, 34 P.2d 113 (1934).

The heart of the referee's opinion here under review involves an application of the Kansas rule as stated by the Honorable E. R. Sloan, referee in bankruptcy, in In re Murray, No. 3116–B–4 (D.Kan. September 17, 1957). Trustee argues that the referee clearly misapplied the rule there stated as to the accounting procedure required. We agree that the referee misapplied the conclusion of Murray.

After discussing the Kansas rule as to chattel mortgages where mortgagor retains possession and sells the goods in the ordinary course of business, referee Sloan said:

"It will be noted that good faith on the part of the parties to the transfer is considered an element in the Kansas law. It follows, therefore, that the accounting of the mortgagor for the proceeds is a necessary element to give validity to the transaction." (In re Murray, supra, p. 14)

Referee Sloan based his holding in Murray on a thorough analysis of several Kansas cases. We have made an independent study of Kansas case law and are in general accord with the conclusions stated in Murray.

In Bussert v. Quinlan, 267 F.2d 219 (10th Cir. 1959), the circuit court succinctly stated the two-sided Kansas rule. First, the court stated that under Kansas law, where a chattel mortgagor in possession, by consent of the mortgagee, whether expressed in writing or not, sells the goods in the ordinary course of business, *without applying any of the proceeds to the payment of the mortgage debt,* the arrangement amounts to a legal fraud and is void as to creditors.

Second, the court stated the other side of the rule thus: where it is provided by the mortgage or a collateral agreement that the mortgagor may retain possession of the goods and sell them in the ordinary course of business either as an agent of the mortgagee or otherwise and apply the proceeds to the payment of the mortgage debt, the arrangement is *not* fraudulent and void as to creditors as a matter of law but will be upheld or condemned according to the good faith or lack thereof in entering into and carrying out the arrangement.

The side of the Kansas rule first stated, was developed in First National Bank v. Hardman, 89 Kan. 212, 131 P. 602 (1913), on which referee Sloan relied heavily in Murray. There the Kansas court indicated that conceding good faith, if the parties understood that the mortgagor was to sell the mortgaged stock of goods without reducing the mortgage

debt, "they knew a course was to be followed the natural consequence of which was to impair the safety of creditors, and which the law, therefore, regards as fatal * * *." 89 Kan. at 215–216, 131 P. at 604.

The second side of the Kansas standard is shown by Frankhouser v. Ellett, 22 Kan. 127 (1879), where Justice Brewer indicated that where the chattel mortgagor by agreement outside the mortgage continued in possession of the goods and is allowed to sell them in the ordinary way and use some portion of the proceeds in support of his family, "the transaction will be upheld or condemned according as it is entered into and carried out in good faith or not." 22 Kan. at 150–151.

In Richardson v. Jones, 56 Kan. 501, 43 P. 1127 (1896), the Kansas court had the following to say about the rule of Frankhouser:

"The correctness of the doctrine announced in the case of Frankhouser v. Ellett has been often questioned, but the case has never been overruled. *The cases in which it has been applied have been of mortgages on stocks of merchandise purchased for sale at retail.* In the case of such a mortgage, the retention of possession by the mortgagor would be of no benefit to him unless permitted to continue the sale of the property in the usual course of trade, and thus continue his business, and realize the best obtainable price in the retail market. Where an arrangement is made between the mortgagor and the mortgagee, *by which the mortgagor acts in good faith* strictly as the agent of the mortgagee, to sell the property at retail for his benefit, the transaction has been upheld by this court; and in some cases the court has gone so far as to uphold an arrangement by which the mortgagor was allowed to use a portion of the proceeds for his support. The view taken has been that the sale of the goods at a fa-

vorable price would necessarily entail expense, and that, where the mortgagor consented to and did act as the agent of the mortgagee in effecting the sale for a less compensation than it would have been necessary to pay to a stranger, the fact of making such an allowance could not be held conclusive proof of fraud." 56 Kan. at 504–505, 43 P. at 1128 (emphasis added).

The application of both requirements, i. e., an accounting procedure and good faith, is demonstrated by Leser & Company v. Glaser, Straus & Company, 32 Kan. 546, 4 P. 1026 (1884), where there was no outside agreement concerning sales proceeds; the mortgagor was a close relative of the mortgagee; the mortgaged property was worth more than the mortgage debt; and there was evidence tending to show that the mortgage was executed to hinder and delay creditors of mortgagor. The Kansas court stated:

"A chattel mortgage is not necessarily void because it contains a stipulation that the mortgagor may retain the possession of the mortgaged property. Nor is it necessarily void because the parties have stipulated, either in the mortgage or elsewhere, that the mortgaged property may be sold by the mortgagor: *provided,* that all is done in good faith, *and* the proceeds of the sale or sales are to be used only for the purpose of paying the mortgagor's debts, and * * * necessary expenses * *." 32 Kan. at 553, 4 P. at 1030 (emphasis added).

From this, we conclude that two things are required to uphold a transaction such as those at bar: good faith on the part of the parties *and* some system of accounting whereby the proceeds of sales by the chattel mortgagor in possession are applied to satisfy the mortgage debt.

The Tenth Circuit in Bussert v. Quinlan, supra, recognized that *both* good faith and a system of accounting for sale proceeds are essential elements un-

der Kansas law in cases where some means for applying sale proceeds to the debt is utilized. And referee Sloan recognized that both elements are required in Murray.

In the case at bar, the referee ruled in Finding No. 7 that as to General Electric an outside agreement was acted upon in which both parties fully acquiesced. And in Finding No. 17 the referee ruled that as to Wilson an agreement was acted upon with full knowledge of all parties. Further, the referee on p. 13 of his opinion stated: "It [validity/invalidity of the security instruments] rather must be found in evidence aliunde of agreements, understandings and practices apart from and largely contradictory to the arrangements contemplated by the trust receipt agreement and conditional sales agreements involved." The referee then gave "full adherence" to the conclusion stated in Murray. (See p. 14 of the referee's opinion here under review). Finally, the referee stated that "this court has concluded that the *requirement* was met to an acceptable degree by General Electric and Wilson." (See p. 15 of referee's opinion here under review) (emphasis added). The "requirement" of which the refereee spoke is a system of accounting.

■ Simply stated, our conclusion is this: Under Kansas law as we understand it, *if* the chattel mortgagor in possession in some way accounts for the sale proceeds to the mortgagee, the transaction is not void as a matter of law. The validity of such a transaction is to be determined by ascertaining whether it was entered into and carried out in good faith. The referee made a finding that an adequate accounting system was utilized in the case at bar. Having done so, the requirement of Hardman was met, and the case became one to be tested by the good faith standards enunciated in the Frankhouser and Leser & Company cases. In other words, having found an adequate accounting system was utilized, the referee was required to make findings relative to the good faith or lack

thereof with which the transactions were entered into and carried out.

We cannot infer that the referee implicitly found good faith by finding an adequate accounting procedure. The two elements, though related, are separate requirements under Kansas law as we understand it. On the contrary, it is clear to us from the referee's ultimate conclusions that he was of the opinion that a lack of good faith existed:

"A serious adverse factor common to all three petitioners was their acquiesence [sic] in the commingling [sic] of funds by Knollhoff in a single bank account with no indication whatsoever of the ownership claims of the three finance companies. A most misleading and erroneous picture of Knollhoff's liquidity was thereby created. Also to be criticized in all instances is the recording of an instrument which reflected a financing arrangement that was never intended to be carried out from the beginning. An inquiring creditor who takes the trouble to check records in the office of the Register of Deeds is entitled to a more accurate disclosure of the actualities of the transaction." Referee's Opinion here under review, p. 16.

■■ These ultimate conclusions of the referee and any finding of good faith are basically inconsistent and show a lack of good faith. There thus being a lack of good faith on the part of the parties in entering into and carrying out the security arrangements, we must conclude that the reclamation petitioners failed to sustain their burden concerning the validity and priority of their security instruments as against the trustee's statutory status. To regain property held by the trustee, a reclamation petitioner must affirmatively establish his own right to possession by proving some kind of ownership; thus the general burden is on the reclamation petitioner. See 4 Collier, Bankruptcy ¶ 70.39(3) (14th ed. 1952); Allen v. Lokey, 307 F.2d 353 (5th Cir. 1962).

Reclamation petitioners having failed to sustain their burden, their petitions should be denied. Accordingly, the referee's order allowing the reclamation petitions is reversed.

It is so ordered.