**In the Matter of Carmallo Benny RO-MANO, Individually and doing business as Tennessee Building Specialties Company.**

No. 21270.

United States District Court
E. D. Tennessee, S. D.

Aug. 21, 1961.

Harry Berke, Chattanooga, Tenn., for bankrupt.

Charles Lusk, Jr., of Whitaker, Hall & Haynes, Chattanooga, Tenn., for intervening creditor U. S. F. & G.

WILSON, District Judge.

This case has come before the Court upon a petition to review the order of the Referee in Bankruptcy denying a discharge to the petitioner. It appears from the record that Carmallo Benny Romano, doing business in the trade name of Tennessee Building Specialties Company, filed a voluntary petition in bankruptcy. Thereafter one of the creditors in the proceedings, United States Fidelity and Guaranty Company, filed an objection to the discharge of the bankrupt, the objection being under Section 14, sub. c(2) (11 U.S.C.A. § 32, sub. c (2) ) of the Bankruptcy Act, upon the ground that the bankrupt had failed to keep books and records from which his financial condition and business transactions might be ascertained. The Referee in a written opinion, after fully reviewing the proceedings and record, concluded that the bankrupt did not keep adequate records by which his financial transactions might be ascertained. The Referee thereupon denied a discharge to the bankrupt. A brief has been filed by both the objecting creditor and the bankrupt. Although numerous cases are cited by each party as upholding their respective positions, the cases are basically not in conflict. Rather it appears that it is primarily a question of fact in each particular case, and the relevancy of the various cases cited depends upon a comparison of the facts in the principal case with the facts in the case cited.

In considering this Petition to Review, there are certain basic legal principles that must be kept in mind at all times by the Court. In the first place, the Bankruptcy Act should be liberally construed to grant relief to honest debtors. All debtors who are in need of the relief provided by the Act, and who reasonably comply with the provisions of the Act, should be granted that relief.

As stated by the Court in the case of In re Horwitz, 7 Cir., 92 F.2d 632, 633:

"Provisions of the Bankruptcy Act relating to the discharge are to be construed liberally toward the bankrupt, and he should be discharged unless the statutory objection is made out clearly."

Likewise, in the case of In re Hatch, D.C., 43 F.2d 463, 464, the Appellate Court stated:

"The law governing discharge of bankrupt is for the benefit of honest debtors and should be construed liberally in their favor."

A second general principle is that in reviewing the order and opinion of the Referee, a broad discretion should be left to the Referee. His decision should not be overruled unless there is an error of law or unless it satisfactorily appears that he has failed to properly review the record or failed to use a sound discretion.

That a reasonably wide discretion should be left to the Referee in such matters is shown by a review of the history of Section 14, sub. c(2) of the Bankruptcy Act, the section under consideration. As originally enacted upon July 1, 1898, before a discharge could be denied for failure to keep records it must appear that the bankrupt should have "with fraudulent intent to conceal his true financial condition and in contemplation of bankruptcy" failed to keep records. Under this wording of the Act, it is obvious that a denial of discharge would rarely be ordered. In 1903 Congress amended the Act so as to provide that if the bankrupt failed to keep records "with intent to conceal his financial condition" a discharge would be denied. (Act of February 5, 1903, Chapter 487, Sec. 4, 32 Stat. at L. 797) In 1926 the Act was again amended, and this time any reference to fraud, concealment or intent was left out, the provision was added that the bankrupt might justify his failure to keep records and the Act was worded to read substantially in its present form. By these amendments the

burden of proving fraud or intent to conceal is taken from the objecting creditor and the burden of proving justification is placed on the bankrupt. It is obvious that these changes indicate an intent upon the part of Congress to place a reasonably wide discretion in the Bankruptcy Court, and in this case in the Referee, with respect to the matter of denying a discharge for failure to keep books. In this regard see also General Orders in Bankruptcy No. 47, 11 U.S.C.A. following section 53, where it is provided that a finding of fact of the Referee is to be accepted by the Court unless "clearly erroneous". See also Remington on Bankruptcy, Vol. 8, Sec. 3414.

A third general principle of law to keep in mind in consideration of this Petition for Review is with regard to the burden of proof. In this case, the burden of proof is established by the Bankruptcy Act itself. In the last sentence of the subsection under consideration it is stated:

"Provided, that if, upon the hearing of an objection to a discharge, the objector shall show to the satisfaction of the court that there are reasonable grounds for believing that the bankrupt has committed any of the acts which, under this subdivision, would prevent his discharge in bankruptcy, then the burden of proving that he has not committed any such acts shall be upon the bankrupt." 11 U.S.C.A. § 32, sub. c.

In considering the record upon this Petition for Review, the Court must first look to determine if the objecting creditor has shown reasonable grounds for believing that the books and records of the bankrupt are insufficient to reveal his financial condition and business transactions. If such reasonable grounds appear, the bankrupt must then bear the burden of establishing either that the books and records are sufficient or that he is justified under all of the circumstances of his business in not keeping such books or records.

Keeping the above stated principles in mind, let us now turn to a consideration of the record in this case.

It appears from the record that three hearings were held before the Referee at which testimony was taken with regard to the adequacy or inadequacy of the books and records maintained by the bankrupt. The first such hearing was upon October 11, 1960. This testimony is summarized in narrative form in the record. The second hearing was held upon November 14, 1960 and a third hearing was held upon November 21, 1960. This testimony is transcribed in full in the record. The transcript, however, is not always lucid or coherent, as it contains many interruptions, many partial questions and partial answers, and many incomplete questions and answers.

■■ After carefully reviewing the record it is believed that the opinion of the Referee fairly summarizes the proof and his statement of the proof is adopted by the Court. Had the proof terminated either at the first or the second hearing, there does appear to be considerable question as to whether the trustee had made a proper effort to reconstruct the records of the bankrupt. At the time of the first hearing, it appears that the trustee, a man with extensive experience both in bookkeeping and accounting and in law and bankruptcy, and with extensive experience as a trustee in bankruptcy proceedings, testified that in his opinion it was "utterly impossible" to understand the business transactions of the bankrupt from the records available to him. Specific illustrations of missing payroll records, missing checks, missing invoices and accounts receivable and other inadequacies in the records were cited, as well as the total absence of any ledger which would organize the receipts and disbursements of the bankrupt. At this hearing, however, it was represented by the bankrupt that there were additional books and records which the trustee had not seen or requested. The hearing was thereupon adjourned to permit the bankrupt to produce these records and the trustee to examine them. There appears

to have been some difficulty in the bankrupt and trustee's getting together to examine these additional records, this not being done until the morning of the second hearing, on November 14, 1960. At the time of the second hearing some question was raised as to whether the trustee had shown enough initiative in searching for records. Neither party appears to have been overly diligent in this regard. Suffice it to say that such initiative as was shown, was shown by the trustee, the record being almost void of any showing of any initiative by the bankrupt, and yet he has the burden of producing or explaining the absence of records. It appears that the most he ever did was to point to "some boxes" and tell the trustee to help himself.

By the time of the second hearing, although the trustee remained of the opinion that the books and records were wholly insufficient to reveal the financial condition and business transactions of the bankrupt, little more had been done by him to examine the "boxes" of records other than to determine that they contained random and miscellaneous receipts, invoices and checks, without organization and without ledger. The trustee refers to his examination of these records as "cursory".

Had the hearing stopped at this point, then it does appear to the Court that testimony might well be cited indicating that the trustee had not exercised sufficient diligence in attempting to examine the records to warrant the Court in denying a discharge to the bankrupt. However the record does not stop at this point. Instead the hearing was recessed a second time and by the time of the third hearing it appears that the trustee had made a rather extensive examination of the records. At the time of the final hearing he remained of the opinion that it was utterly impossible to reconstruct the financial condition of the bankrupt from the record.

Therefore, while it is possible to cite testimony, particularly upon the first and second hearing, of lack of diligence in searching for and reviewing records of the bankrupt, the testimony must be reviewed in the light of all three hearings to determine whether there was sufficient proof to establish "reasonable grounds" for believing that the records were insufficient. When the testimony of all of these hearings is reviewed together, it is believed the Referee was correct in holding that reasonable grounds did exist for believing that the bankrupt's records were insufficient.

Moreover, the Referee's decision in this regard is strongly fortified by the testimony of Mrs. Romano, the wife of the bankrupt, in her testimony at both the second and third hearing. From this testimony it appears that Mrs. Romano was in the house building business at the same time that her husband was in the building supply business. She kept for her husband "what records he kept". There were numerous and large transactions between herself and her husband. She had free access to and use of his resources. Although she insisted she kept records of these dealings between herself and her husband, and a ledger sheet was produced on these transactions at the time of the third hearing, this admittedly was not complete. On the contrary, as stated by Mrs. Romano, much of the record keeping was "just between ourselves". For example, there was no record of the sales tax account on these records. There was no record of car payments made by the bankrupt on the wife's car. There were repeated references to rent accounts "kept between us". They only kept a record of the "large items," and when reference was made to an item of $223.02, the witness stated "I didn't say smaller items like that". And yet when the husband and wife were in related businesses and were intermingling their business accounts, this was the area in which records were most needed and most appropriate for it is the area where other creditors could be most easily and readily taken advantage of. It is an area at which creditors appropriately look most carefully in a bankruptcy proceeding. It is an area where honest debtors seeking relief in

bankruptcy should come forth with the record. It is an area in which fraud is often practiced and therefore honesty is best shown by the keeping of records and a ready and full disclosure. In this area, more so even than in others, it is insufficient just to "keep the record between ourselves". The mind of a husband or wife is a difficult and unpromising area for a creditor to search for missing assets of the other spouse. Moreover, as quoted by the Referee in his opinion, and as stated in the case of In re Snyder, D.C.1953, 112 F.Supp. 897, 899:

> "It is not enough, as the bankrupt's son-in-law testified, that they kept adequate records for *their own purpose*. The records are for a broader purpose than for self-satisfaction. There should be records of the character that would permit the ascertainment of the bankrupt's financial condition by those who had a right to know what his transactions were and the extent of his financial dealings."

Having established that the Referee was correct in holding that there were reasonable grounds for believing the bankrupt had not kept records as required by the Act, the question then arises as to whether the bankrupt has borne the burden of proving that he did keep adequate books and records or, on the other hand, that he was justified in not keeping such records.

■ With regard to justifying the absence of records, or the failure to keep records, no attempt has been made to do so in this case. On the contrary, it is specifically insisted by the bankrupt that adequate records were kept. The statement is made by the bankrupt, in explanation of the absence of payroll records, that he had no employees after 1958. This explanation was made in support of the adequacy of the records kept, however, not to justify the failure to keep records.

■ The only remaining issue therefore is whether the bankrupt has carried the burden of establishing that he did keep books of the accounts and records from which his financial condition and business transactions might be determined. In support of this proposition the bankrupt states that he has adequate records. His wife states that he has adequate records. They support this opinion with a list of the various types of records maintained, listing some 14 different kinds of records, varying from banking records to tax records. They further support their opinion by reference to "ten boxes" of records. Nowhere, however, is there any completeness claimed for the records. On the contrary, it is admitted that at least as to transactions between the bankrupt and his wife the records are not complete. Nowhere does the bankrupt purport to in any way organize his records so that either their completeness or their adequacy may be determined.

It is obvious from the size of the schedules in the bankruptcy petition that the bankrupt was operating a substantial building supply business. His total liabilities were listed at $109,683.53, of which $103,527.21 were unsecured. It would certainly appear that a business capable of generating this volume of indebtedness is of such size and nature as to make it necessary to keep books and records in a reasonably understandable and complete manner.

In support of his insistence on the adequacy of his records, the bankrupt appears to rely primarily upon the variety and volume of records maintained and to ignore both completeness and clarity. The law does not provide that a bankrupt shall keep voluminous records, but rather that he keep records "from which his financial condition can be ascertained". The fact that the bankrupt had "ten boxes" of miscellaneous records, receipts, invoices, bank statements, cancelled checks, etc., would tell little or nothing about the business unless it were established that these records were reasonably complete.

A mass of unorganized, mixed and miscellaneous records could be as confusing as no records. The bankrupt cannot ful-

fil his burden of proof by dumping a great volume of miscellaneous papers upon the trustee and leaving completely to the trustee the responsibility for fitting the jigsaw together and determining if all of the pieces are there. Some organization of voluminous records can be as much a part of record keeping as the existence of the records themselves.

Although no particular form of records is required of the bankrupt, and it is not required that checks, receipts, accounts payable, etc., be organized in the form of daily, monthly or annual ledgers, in a business the size of this bankrupt, the bankrupt has some duty to keep and present the records in a reasonably understandable form. The full burden for this cannot be shifted to the creditors, the trustee or the Court.

In referring to what can be "ascertained" from the bankrupt's books and records, the Act does not impose upon the trustee, the creditors or the Court the very utmost in industry and ingenuity, but rather reasonable industry and reasonable ingenuity.

A mere showing of a variety of records likewise does not fulfil the bankrupt's burden of proof. It is not variety, but reasonable completeness that permits one to understand the financial affairs of another. It is not the number of records but their intelligibility that permits one to comprehend the business transactions of a bankrupt.

Under the record in this case it is the opinion of the Court that even a liberal construction of the Bankruptcy Act in favor of granting a discharge would not warrant a reversal of the Referee's decision. The Court finds no error of law in the decision. Likewise, the Court cannot say that the Referee has failed to use a sound discretion in his interpretation of the proof and in reviewing the record. It does appear from the record that the objecting creditor has shown reasonable grounds for believing the books and records of the bankrupt are insufficient to reveal his financial condition and business transactions. On the other hand, it does not appear from the record that the bankrupt has borne the burden of establishing that his records were either reasonably complete or reasonably understandable. The decision of the Referee will therefore be affirmed.

An order will be entered accordingly.