**In the Matter ot Richard Perry WOOD-ING and Laura Jean Wooding, Bankrupts.**

**Nos. 22886-B-2 and 22887-B-2.**

United States District Court,
D. Kansas.

Dec. 23, 1974.

452

Jean Oliver Moore, Wichita, Kan., for petitioner.

Louise Mattox, Wichita, Kan., for Bankrupts.

James R. Barr, Wichita, Kan., for Trustee.

## DECISION OF THE COURT

THEIS, District Judge.

Mutual Benefit Society of Baltimore City petitions for review of the Bankruptcy Referee's order denying a motion for an extension of time in which to file application to determine dischargeability and for an order setting aside discharge insofar as it applies to Mutual's claim. Petitioner concedes that its motion was submitted after the time fixed by the Referee for filing applications had expired and after discharge had been granted the bankrupts. Nevertheless, it is alleged that the Referee erred as a matter of law in denying the motion.

The question certified to the Court for determination is: "Did the Court (Referee) error (sic) in denying Mutual Benefit Society of Baltimore City's motion for an extension of time in which to file application to determine dischargeability under § 17c(2) of the Bankruptcy Act, 11 U.S.C. § 35, after the time for filing such application as fixed by the Court (Referee) had expired and a discharge granted?"

Though the allegation is not specifically made, abuse of discretion by the Referee in denying the motion is the apparent basis for review. That is the theory permeating petitioner's Statement of Authority which was submitted to the Referee and which is therefore a part of the record on review. No other basis for relief is suggested by petitioner's general allegation that the Referee erred as a matter of law in denying the motion. It is on this issue that the Court's decision rests.

Petitioner's contention of non-dischargeability arises under § 17c(2) of the Bankruptcy Act, 11 U.S.C. § 35. Category (2) debts pertain to liabilities for obtaining money or property by false pretenses or false representations, and for obtaining money or property on credit in reliance upon a materially false statement in writing respecting debtor's financial condition made or published with intent to deceive, or for willful and malicious conversion of the property of another. Dischargeability of category (2) debts is subject to the procedural requirements of § 17c(2) and § 14b(1), 11 U.S.C. § 32.

Section 17c(2) provides:

"A creditor who contends that his debt is not discharged under clause (2) . . . of subdivision (a) of this section must file an application for a determination of dischargeability within the time fixed by the court

pursuant to paragraph (1) of subdivision (b) of section 14 of the Act and, unless an application is timely filed, the debt shall be discharged."

Section 14b(1) contains the following language:

"The court shall make an order fixing a time for the filing of objections to the bankrupt's discharge and a time for the filing of applications pursuant to paragraph (2) of subdivision c of section 17 of this Act to determine the dischargeability of debts, which time or times shall be not less than thirty days nor more than ninety days after the first date set for the first meeting of creditors. Notice of such order shall be given to all parties in interest . . . The Court may, upon its motion or, for cause shown, upon motion of any party in interest, extend the time or times for filing such objections or applications."

Prior to expiration of the filing deadline, § 14b(1) clearly grants the Referee discretion to extend the time for filing applications. The extension may be given on his own motion or, for cause shown, on the motion of any party in interest. Whether such discretion is retained after the filing deadline has expired is problematical. Section 17c(2) seems to provide for automatic discharge upon failure of timely filing by a creditor. That issue is more fully discussed herein. Its resolution, however, is unnecessary to the determination of this case. Here, the Court may assume, without deciding, that the Referee did have discretion to grant the extension of time requested by petitioner.

■ Although no presumption of correctness applies to the Referee's conclusions of law, all presumptions with respect to regularity of the proceedings are to be indulged in favor of the Referee's order. In re Dobbins, 371 F.Supp. 141 (D.Kan.1973); In re Stafos, 354 F. Supp. 299, aff., 477 F.2d 369 (10th Cir. 1973); Washington v. Houston Lumber Co., 310 F.2d 881 (10th Cir. 1962); Tarutis v. United States (Small Business Admin., Agency), 354 F.2d 546 (8th Cir. 1965). Absent abuse of discretion, his decision as to discretionary matters should be unfettered. In re Romano, 196 F.Supp. 954 (E.D.Tenn.1961); In re German, 193 F.Supp. 948 (S.D.Ill.1961). What then does the record disclose? Were the facts so extraordinary as to demand that petitioner's motion be granted? Was denial of the motion in light of these facts so inequitable as to constitute abuse of discretion?

■ On review, the Referee's findings of fact are to be accepted by the Court unless they are clearly erroneous. Bankruptcy Rule 810; Moran Bros. v. Yinger, 323 F.2d 699 (10th Cir. 1963); In re Fuqua, 330 F.Supp. 1050 (D.Kan. 1971), aff., 461 F.2d 1186 (10th Cir. 1972). Here, the petitioner alleges no factual error; neither does a review of the record disclose any clearly erroneous findings of fact. Thus, the Referee's findings as to factual matters are adopted by the Court. The substance of those pertinent to review of this case are hereinafter set forth:

1. A voluntary petition in bankruptcy was filed on August 7, 1972, by Richard Perry Wooding and Laura Jean Wooding, bankrupts.

2. A first meeting of creditors was held on September 12, 1973. At this meeting the petitioner, Mutual Benefit Society of Baltimore City, was represented by its attorney, Jean Oliver Moore.

3. February 5, 1973, was fixed as the last date for filing objections to discharge and applications to determine dischargeability, as required by § 14 of the Bankruptcy Act, 11 U.S.C § 32. Notice thereof was given to all creditors.

4. Petitioner filed neither an objection to discharge nor an application to determine dischargeability.

5. Petitioner did not move for an order extending the time in which to file objections to discharge or applications to determine dischargeability under § 17a(2), (4) or (8) of the Bankruptcy Act, 11 U.S.C § 35.

6. The bankrupts received a discharge on February 15, 1973.

7. On February 16, 1973, petitioner filed a motion for additional time in which to file objections to discharge to its particular claim and for an order setting aside and vacating the discharge insofar as same applied to petitioner's claim. The motion was predicated in part on bankrupts obtaining an extension of time to answer interrogatories filed by petitioner.

8. The interrogatories were answered by bankrupts and served by mail on petitioner's attorney on January 16, 1973, approximately twenty days prior to expiration of the date for filing objections to discharge or applications to determine dischargeability.

9. Petitioner's claim was based on a judgment entered in the District Court of Sedgwick County on March 24, 1972. The petition filed in that case was an action on a promissory note, and there were no allegations of fraud or other conduct, fact, or circumstance, which would except the $3,000.00 judgment from discharge under § 17 of the Bankruptcy Act, 11 U.S.C. § 35, or which would give rise to a ground for objection to bankrupts' discharge under § 14 of the Act, 11 U.S.C. § 32, and no such findings are contained in the journal entry of judgment.

10. No action or conduct on the part of the bankrupts prevented petitioner from filing timely objections to discharge or applications to determine dischargeability, or from obtaining an extension of time in which to file application to determine dischargeability.

■ The Court notes that petitioner's motion and the Certificate of Petition for Review recite four factors allegedly preventing timely filing of the application: (1) bankrupts' delay in answering interrogatories; (2) two days illness of petitioner's counsel; (3) counsel's press of other trial work; and (4) petitioner's involvement with its annual audit examination by the State of Maryland. Only one of these factors was caused by the bankrupts. The Referee found and the Court concurs in the finding that this delay did not prevent timely filing. The other factors were attributable directly to petitioner or its counsel. Though perhaps somewhat disruptive of petitioner's and counsel's schedules, none presented insurmountable obstacles to timely action by petitioner.

The importance of punctuality in the filing of applications to determine dischargeability is underscored by the language of § 17c(2) of the Bankruptcy Act, 11 U.S.C. § 35. It provides that the application *must* be filed at the time fixed by the Referee. As previously indicated, for debts allegedly not discharged because they come within the provisions of § 17a(2), the statute seems to mandate automatic discharge if the application is not timely filed. See also Arrow Wrecking Co. v. Semonian, 375 F.2d 67 (4th Cir. 1967).

Admittedly, bankrupts were tardy in answering petitioner's interrogatories. Nevertheless, the interrogatories were served on petitioner's attorney approximately twenty days prior to expiration of the filing deadline. With the exercise of reasonable diligence, a request for an extension of time in which to file application to determine dischargeability could have been made in the twenty-day period. No such request was made, nor was any other formal action taken until February 16, 1973, eleven days after the filing deadline and one day after discharge had been granted. The law has never favored legal lassitude. The Referee's refusal at that late time to vacate the discharge as it applied to petitioner's debt and to extend the deadline for filing an application to determine dischargeability did not constitute abuse of discretion.

■ That the Bankruptcy Act should be construed liberally in favor of the honest bankrupt is fundamental. The Act was intended to provide a means by which debtors might reach "a new opportunity and a clear field for further

effort, unhampered by the pressure and discouragement of pre-existing debt." Local Loan Co. v. Hunt, 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230, 1235 (1934). See also, In re Heath, 43 F.2d 463 (D.Maine 1930); In re Romano, supra; In re Jones, 490 F.2d 452 (5th Cir. 1974). The result urged by petitioner contravenes the clear intent of the Act. Moreover, § 17c of the Bankruptcy Act is of central concern in the instant case. This section became law with passage of the 1970 Bankruptcy Act amendments, the so-called New Dischargeability Law. Excerpts from a Report of the House Committee on the Judiciary make clear the legislative intent underlying those amendments:

"The major purpose of the proposed legislation is to effectuate more fully, the discharge in bankruptcy by rendering it less subject to abuse by harrassing creditors. Under it, the matter of dischargeability of the type of debts commonly giving rise to the problem; that is, those allegedly incurred as a result of loans based upon false financial statements, will be within the exclusive jurisdiction of the bankruptcy court. The creditor asserting nondischargeability will have to file a *timely* application in the absence of which the debt will be deemed discharged. H.R. No. 91–1502, 91st Cong., 2d Sess. (1970)." (Emphasis added.)

If, indeed, the Referee had discretion to grant petitioner's motion, his decision to deny it did not constitute abuse of discretion. The record reveals no extraordinary circumstances compelling the Referee's accession to petitioner's motion. Petitioner had adequate notice of the expiration date. It was not prevented by the bankrupts from timely filing its motion. The Referee's determination effectuates the Bankruptcy Act's fundamental purpose as well as the legislative intent underlying § 17c, 11 U.S. C. § 35. It should be and is therefore affirmed.

Because of this holding, the Court need not decide whether the Referee did, in fact, have discretion to grant petitioner's motion had he decided to do so. Let it simply be noted *obiter dictum* that the Court doubts the existence of such power. The plain language of § 17c(2) of the Act appears to require automatic discharge of debts claimed to be nondischargeable under § 17a(2) unless a timely application or complaint to determine dischargeability is filed by the creditor. "Collier in Bankruptcy" is in accord:

"With respect to debts excepted from a discharge by clause (2) . . . the bankruptcy court has exclusive jurisdiction to make that determination and a complaint for such a finding must be filed by anyone holding such a debt. In the absence of a timely filed complaint, the debt will be discharged barring subsequent suit or collection process. '1A Collier on Bankruptcy,' ¶17.28A [3], at 1741 (14th Ed. 1974).

"Pursuant to § 17c(2) . . . a creditor holding a debt claimed to be nondischargeable under § 12a(2) . . . must file his complaint for such a determination within the time fixed by the court. Failure to do so results in such a debt being discharged. '1A Collier on Bankrupty' ¶17.28A [3], at 1742.1."

Section 15 of the Act, 11 U.S.C. § 33, contemplates revocation of a prior discharge and sets forth specific circumstances where revocation is appropriate. Petitioner, however, does not allege that this is a § 15 matter; nor do the facts of the case place it within the purview of § 15. The legislative history of the 1970 Bankruptcy Act amendments, as well as the specific language of § 17c, require diligence from creditors claiming nondischargeability of a debt under § 17a(2). No such diligence was here exhibited by petitioner.

It is therefore the opinion of the court that the Referee in Bankruptcy commit-

ted no error in denying petitioner's motion for an extension of time in which to file application to determine dischargeability under § 17c(2) of the Bankruptcy Act, 11 U.S.C. § 35, after the time for filing such application as fixed by the Referee had expired and a discharge granted. The order of the Bankruptcy Court is hereby affirmed.