**Harry M. WASHINGTON, Trustee in Bankruptcy, Appellant,**

v.

**HOUSTON LUMBER COMPANY, Appellee.**

**No. 6997.**

United States Court of Appeals Tenth Circuit.

Nov. 1, 1962.

Wm. I. Robinson, Wichita, Kan. (Wm. F. Pielsticker, Wichita, Kan., with him on the brief), for appellant.

Robert T. Cornwell, Wichita, Kan. (Wayne Coulson, Paul R. Kitch, Dale M. Stucky, Donald R. Newkirk, Robert J. Hill and Gerritt H. Wormhoudt, Wichita, Kan., and Hugo T. Wedell and Homer V. Gooing, Wichita, Kan., of counsel, with him on the brief), for appellee.

Before LEWIS, BREITENSTEIN and SETH, Circuit Judges.

BREITENSTEIN, Circuit Judge.

In these bankruptcy proceedings appellee, Houston Lumber Company (Hous-

ton), claims a lien for materials furnished for the construction of houses. The Referee denied the claim on the ground that Houston was a subcontractor of the second degree and had no lien under Kansas law. On review the district court reversed, holding that Houston was a subcontractor of the first degree and hence had a lien. The Trustee has appealed.

Elmdale Developing Company, Inc., and its wholly owned subsidiary, Karen Homes, Inc., herein referred to jointly as Bankrupts, were in the business of prefabricating and building houses and were adjudged bankrupt on a creditors' petition. The plan of Bankrupts was to operate in communities through sponsors who would purchase the prefabricated homes, build and sell them. Reeves, an employee of Bankrupts, interested a group of prospective buyers at Ulysses, Kansas, in Bankrupts' products. Oliver, a man with no experience in the construction business but with good credit, was obtained as Bankrupts' sponsor at Ulysses. Oliver contracted with four of the buyers to sell them homes and then contracted with Bankrupts for the construction of the homes by Bankrupts. The procedure thus followed deviated from the basic operational plan of Bankrupts. Houston supplied material to Bankrupts for the construction of the homes.

At the time of bankruptcy the homes were not completed. Appellant Trustee completed the construction and petitioned the Referee for an order requiring Oliver to turn over the balance due on the construction cost, for the determination of the validity of the lien claims of Houston and others, and for the transfer of the valid lien claims from the properties to the fund due from Oliver. The Trustee admits that $3,516.46 is due to Houston and the question is whether Houston has a lien against the fund for that amount.

Under Kansas law a subcontractor of a subcontractor has no lien rights.[1] The Trustee contends that Oliver was the prime contractor, Bankrupts the subcontractor, and Houston a subcontractor under Bankrupts. Houston claims that Bankrupts were the prime contractor and hence Houston was a subcontractor of the first degree and had a valid lien. No question is raised concerning the sufficiency of compliance with the Kansas lien law if Houston was a subcontractor of the first degree. The Trustee admits that Oliver did no construction work on the houses and that the houses were built by Bankrupts.

Contracts between Oliver and the buyers and between Oliver and Bankrupts were received in evidence. At the hearing before the Referee neither Reeves nor Oliver was called as a witness. Two buyers, and the wife of one of them, testified that they thought they were doing business with Bankrupts, that they considered Oliver a representative of Bankrupts, and that they knew Oliver was not in the construction business. Joan Bilson, a stockholder and officer of Bankrupts, appeared as a witness for another lien claimant who has not appealed. Houston contends that, as Bilson testified after Houston had rested its case, her testimony may not be considered in connection with its claim. In view of the state of the record and the manner in which both the Referee and the district court treated the case, we believe that her testimony must be considered.

The Referee, after commenting that the testimony of the buyers was not impressive, held that Oliver was the prime contractor. The district court disagreed, saying that the uncontradicted testimony established that Oliver was the agent of Bankrupts and that Bankrupts were the prime contractor.

The fact findings of the Referee are binding, both on the district

1. G.S.Kan.1961 Supp. § 60–1403; Indiana Limestone Co. v. Cuthbert, 126 Kan. 262, 267 P. 983; Nixon v. Cyndon Lodge No. 5, Knights of Pythias, of Salina, 56 Kan. 298, 43 P. 236.

court and on this court, unless clearly erroneous.[2] While we agree with the district court that the uncontradicted testimony of the buyers may not be ignored,[3] we are of the opinion that the issues presented concern the conclusions to be made from the findings rather than the validity of the findings.

Oliver, whose business interests had been confined to farm implement sales, a liquor store, and rental property, participated in the transactions through arrangements made by Reeves, an admitted agent of Bankrupts. The purchase contracts between Oliver and the buyers named Oliver as the seller and covered real property even though Oliver never owned that property. Oliver signed applications for Federal Housing Administration mortgage loans with no other designation of capacity than "Builder-Seller-Other." A contract between Oliver and Bankrupts recited that Oliver had obtained contracts for the construction of four homes and provided that Bankrupts should build the homes and receive therefor the principal amount of the FHA valuation, less land cost and certain percentages, with the balance to go to Oliver "as his compensation for his services." Bilson, the secretary of Bankrupts, testified in part thus:

> "He [Oliver] didn't have a contract to build homes. He had a contract to sell homes to individuals, and he gave us [Bankrupts] a contract to build them."

Bilson further testified that various papers in connection with the transactions were prepared by Bankrupts and that it was never intended that any one other than Bankrupts would build the homes. In the words of Bilson, Bankrupts "did the supervising, the building, obtained all of the materials, and made all of the negotiations for all of the subcontracts."

 Houston says that Oliver was an agent of Bankrupts and we agree. The Kansas rule is that agency is a question of law for the court[4] and that to establish such relationship express appointment and acceptance are not necessary but the relationship may be implied from statements of the parties, their conduct, and other relevant circumstances.[5] The evidence and the findings of the Referee compel the conclusion that Oliver was the agent of Bankrupts in the transactions in dispute. Bankrupts were the prime contractor and Houston was a subcontractor of the first degree and within the protection of the Kansas lien laws.

Affirmed.

2. Potucek v. Cordeleria Lourdes, 10 Cir., 310 F.2d 527, decided November 1, 1962.

3. Potucek v. Cordeleria Lourdes, supra; Nicholas v. Davis, 10 Cir., 204 F.2d 200, 202.

4. Shugar v. Antrim, 177 Kan. 70, 276 P.2d 372, 375.

5. Walker v. Eckhardt, 122 Kan. 453, 251 P. 1093, 1095.