In the Matter of Don N. HAMILL and Ella E. Hamill, Bankrupts.

No. 12987–B–2.

United States District Court, D. Kansas.

July 15, 1970.

Holmes, Darrah, Dekker, Mellor & Compton, Wichita, Kan., for objecting creditor, State Line Grain Co.

James S. Phillips, Wichita, Kan., for bankrupt.

Arthur G. Johnson, Jr., Wichita, Kan., trustee.

## MEMORANDUM AND ORDER

THEIS, District Judge.

Don N. Hamill, one of the bankrupts in the captioned case, has petitioned this

Court for review of an order previously entered by the Honorable Robert B. Morton, Referee in Bankruptcy. The effect of this order was to deny the petitioner homestead rights in certain realty, as more fully set forth below. The Court notes at the outset that the question is properly before the Court and that jurisdiction is present to resolve the issue.

■■■ Under Bankruptcy Gen. Order 47, 28 U.S.C.A., and the applicable decisions of the federal courts, the scope of review by this Court of a Referee's report and order is rather narrow. The Court is bound to accept the Referee's findings of fact unless they are clearly erroneous. Bankruptcy Gen. Order 47, 28 U.S.C.A.; See e. g. Moran Bros., Inc. v. Yinger, 323 F.2d 699 (10 Cir.1963); Washington v. Houston Lumber Co., 310 F.2d 881 (10 Cir.1962); In re Clancy, 279 F.Supp. 820 (D.C.Colo.1968), aff'd. sub nom. Clancy v. First National Bank of Colorado Springs, 408 F.2d 899 (10 Cir.1969); In re Knollhoff, 239 F.Supp. 927 (D.C.Kan.1965). However, where the question presented is solely one of law, no presumption of correctness applies and the Referee's findings cannot be approved without this Court's independent determination of the law. Solomon v. Northwestern State Bank, 327 F.2d 720 (8 Cir.1964); In re Newcomb Interests, Inc., 171 F.Supp. 704 (D.C.Cal. 1959), aff'd. sub nom. Huffman v. Farros, 275 F.2d 350 (9 Cir.1960); In re Dejay Stores, Inc., 220 F.Supp. 497 (D. C.N.Y.1963). This Court has reviewed the Referee's order, which is the basis of this appeal, and makes the following findings and orders.

The findings of fact made by the Referee are not clearly erroneous and are accepted as correct by this Court after a complete review of the record. The facts as they appear from the record, and as they were found to exist by the Referee, are as follows:

1. The bankrupts filed their voluntary petition on October 13, 1967. In the schedules attached thereto no claim of homestead exemption was made.

2. On the date of their bankruptcy, and for some seventeen years prior thereto, the Hamill family resided on a tract of farming land consisting of approximately 140 acres in Harper County, Kansas. The legal description of the property is not germane to the present issue.

3. Neither at the time of his bankruptcy, nor at any prior time, did the bankrupt have fee title to the land. Since March 24, 1951, the property was owned by May Snell (the bankrupt's grandmother) to the extent of an undivided one-half interest; Gladys Hamill (the bankrupt's mother) an undivided one-fourth interest; and Grace Mayo (the bankrupt's aunt) an undivided one-fourth interest.

4. The bankrupt had occupied and farmed the land under an oral lease agreement between himself and his grandmother (May Snell), whereby she received one-third of the crops as landlord rent. Over the years, Hamill, on his own initiative, constructed certain improvements on the property, including a water system, a modern bathroom in the residential structure, fences, a chicken house, a farm pond, and miscellaneous sheds.

5. No agreement was proved calling for either a conveyance or a devise of the farm to Hamill by any of the owners.

6. The records of the Harper County, Kansas Federal Agricultural Stabilization and Conservation Service disclose that at the time of bankruptcy, May Snell was registered as the owner-landlord, and the bankrupt, Don N. Hamill, as tenant-operator of the subject property.

7. On December 7, 1967, which was approximately two months following the Hamill bankruptcy, May Snell died, leaving a will devising the bankrupt Don N. Hamill her undivided one-half interest in the subject property.

8. On February 1, 1968, in a special examination called by the trustee, the bankrupt testified that he had inherited

the property subsequent to his bankruptcy.

9. On February 13, 1968, bankrupt filed a petition for leave to amend his Schedule B–5 to include a claim of homestead exemption to the entire tract of land on the basis of equitable interest. On April 18, 1968, he supplemented his petiiton for leave to amend to include as an asset of his estate his ownership in the real property.

10. On June 14, 1968, the Court entered an order granting leave to amend his petition. This was subsequently done by the bankrupt.

11. During the period of time that Hamill occupied the land, he paid the real estate taxes thereon and listed it as his residence for voting purposes, income tax returns and postal services.

■ On these facts the Referee correctly found that on the date of bankruptcy Hamill had homestead rights to a leasehold estate in the subject property. The Referee reserved a ruling on whether Hamill could assert any claim of homestead exemption to the one-half interest he acquired under the terms of May Snell's will. Subsequently, on August 12, 1969, the Referee determined that the bankrupt's undivided one-half interest in the subject property was an asset of the general estate under Section 70 of the Bankruptcy Act, 11 U.S.C.A. § 110, and subject to liquidation by the trustee, and the bankrupt's claim of exemption thereto was denied. It is this ruling that forms the basis for Hamill's petition for review.

Section 70 of the Bankruptcy Act, 11 U.S.C.A. § 110, provides in applicable part as follows:

"(a) The trustee of the estate of a bankrupt and his successor or successors, if any, upon his or their appointment and qualification, shall in turn be vested by operation of law with the title of the bankrupt as of the date of the filing of the petition initiating a proceeding under this title, *except insofar as it is to property which is held to be exempt*, to all of the following kinds of property wherever located * * * (7) contingent remainders, executory devises and limitations, rights of entry for condition broken, rights or possibilities of reverter, and like interests in real property, which were nonassignable prior to bankruptcy and which, within six months thereafter, become assignable interests or estates or give rise to powers in the bankrupt to acquire assignable interests or estates; and * * *.

"All property, wherever located, *except insofar as it is held to be exempt*, which vests in the bankrupt within six months after bankruptcy by bequest, devise or inheritance shall vest in the trustee and his successor or successors, if any, upon his or their appointment and qualification, as of the date when it vested in the bankrupt * * *." (Emphasis added.)

The question presented turns upon the relationship of the parties herein and their respective interests in the subject property. In order to fully understand the relationship and interest of the bankrupt and the trustee to the subject property, it is necessary to keep in mind the history and purpose of Section 70 of the Act.

Prior to the Chandler Act of 1938, many inequities were worked upon a bankrupt's creditors by virtue of the fact that clause (7) and the following paragraph of Section 70, supra, were not in existence. A debtor could, prior to the addition of these sections, petition for bankruptcy and then come into great wealth during the administration of his estate by virtue of a ripening of what previously had been only an executory devise or bequest not subject to the trustee's administration. Since the cleavage date was the date on which the petition was filed, a debtor could petition for bankruptcy shortly before he inherited a large amount of money or property and virtually "defraud" his creditors. It was for this reason that Section 70 was amended to include provisions for prop-

erty that was acquired within six months after filing the petition in bankruptcy. 4A, Collier, Bankruptcy, § 70.03 at 37 (14th ed. 1967).

■ The paragraph following clause (7) of Section 70, supra, which provides that property which vests in the bankrupt "by bequest, devise or inheritance" within six months after bankruptcy, "except insofar as it is property which is held to be exempt," shall vest in the trustee, seems to clearly indicate that the drafters of this section had in mind certain cases where after-acquired property would be exempt and not pass to the trustee. If this were not so, there would have been no need to include the phrase "except insofar as it is property which is held to be exempt." In other words, the mere fact that the property is after-acquired does not, ipso facto, render it part of the general bankruptcy estate and subject to liquidation by the trustee. The 1938 Act provided for exempt property not to vest in the trustee in the first sentence of § 70(a). However, it was not until after the 1952 amendment to the Act that the paragraph following clause (8) of § 70(a) provided expressly that after-acquired property through "bequest, devise or inheritance" might also be exempt. This did not change the existing law, but merely clarified it to indicate that such after-acquired property, always exempt prior to 1938, might be exempt if it otherwise qualified. 4A, Collier, Bankruptcy, § 70.03 [2] at 38 (14th ed. 1967).

■ We must now turn to the applicable state law to determine whether the bankrupt is entitled to an exemption under § 6 of the Act. 11 U.S.C.A. § 24. § 70(c) of the Act provides that the trustee is given the status of an ideal lien creditor. This status is determined by the substantive law of the state. Hence, it is the law of the State of Kansas that must be determinative of the relative interests of the parties in the subject property. Carroll v. Holliman, 336 F.2d 425 (10 Cir.1964), cert. denied 380 U.S. 907, 85 S.Ct. 889, 13 L.Ed.2d 795 (1965); Pacific Finance Corp. v. Ed-

wards, 304 F.2d 224 (9th Cir.1962). If, under the law of Kansas, an ideal lien creditor could have obtained a lien on the property, then the trustee must prevail for this is the position that he occupies under the Act. If, however, a lien creditor could not acquire a lien on the property under the substantive Kansas law, the bankrupt must prevail. If the exemption is good under state law and prevents a lien creditor from executing upon the property, it is equally good under the Act and prevents the trustee from gaining title to the property. Cf., Pacific Finance Corp. v. Edwards, supra, at 228. More simply stated, the issue becomes this: Could an ideal lien creditor have executed upon the subject property under the law of Kansas?

The Kansas homestead exemption statutes provide as follows:

*"Homestead; extent of exemption.* A homestead to the extent of one hundred and sixty (160) acres of farming land * * * occupied as a residence by the family of the owner, together with all the improvements on the same, shall be exempted from forced sale under any process of law * * *." (K.S.A. 60–2301.)

*"Designation of homestead.* Whenever any levy shall be made upon the lands or tenements of a householder whose homestead has not been selected and set apart, such householder, his wife, agent or attorney may notify the officer in writing at the time of making such levy, or at any time before the sale, of what he regards as his homestead, with a description thereof, and the remainder alone shall be subject to sale under such levy." (K.S.A. 60–2302.)

■ The rule has long been in Kansas that where one purchases or acquires a property with the intention of occupying it as a homestead, and does so as promptly as circumstances will permit, a judgment lien does not attach thereto so as to take precedence over the homestead right. Angola State Bank v. Fry, 130 Kan. 641, 287 P. 245 (1930). It is

said that the subsequent occupation of the property secures the homestead ab initio. Edwards v. Fry, 9 Kan. 417, 425 (1872). Therefore, under Kansas law, an ideal lien creditor could not have obtained execution on the subject property. See also Monroe v. May, Weil & Co., 9 Kan. 466 (1872); Gilworth v. Cody, 21 Kan. 702 (1879); Upton v. Coxen, 60 Kan. 1, 55 P. 284 (1899); Stowell v. Kerr, 72 Kan. 330, 83 P. 827 (1905); Randolph v. Wilhite, 78 Kan. 355, 96 P. 492 (1908); Case Threshing Machine Co. v. Roach, 91 Kan. 840, 139 P. 430 (1914).

■ Under K.S.A. 60–2301, supra, three things are necessary for the property to acquire the status of homestead. It must be occupied by the owner, it must be occupied by the family of the owner as a residence, and the owner must intend that the property be his homestead. All of these factors were found to be present by the referee in the case at bar. KSA 60–2302, supra, makes it clear that the claimant need not have originally done any act to declare that the property is claimed as a homestead. When the creditor attempts to execute upon the property is soon enough to assert the claimed exemption.

The basis of the Referee's order denying the bankrupt any homestead rights in the fee title to the property was that the bankrupt's right to an exemption depends solely upon conditions existing at the time the petition in bankruptcy is filed. In making such ruling, the Referee relied on White v. Stump, 266 U.S. 310, 45 S.Ct. 103, 69 L.Ed. 301 (1924). For this reason, the Referee allowed only a homestead exemption in the leasehold estate. However, Section 70 of the Bankruptcy Act makes it clear that after-acquired property may be held exempt, thus making White v. Stump, supra, no longer a viable case.

Most of the Kansas cases cited above involved situations where the judgment debtor acquired property by purchase or bequest, and then subsequent to the creation of the judgment lien, attempted to claim a homestead in the after-acquired property. In each instance the Supreme Court allowed the exemption.

In Angola State Bank v. Fry, supra, the plaintiff bank attached certain property that had been inherited by the defendant Fry. The attachment was prior to Fry's moving onto the property and occupying it as a homestead. The Supreme Court allowed the homestead exemption, stating that a judgment lien would not attach thereto so as to take precedence over the homestead right. More recently, in discussing the importance of the homestead exemption, the Kansas Supreme Court stated that "[t]he homestead is something toward which the eye of the creditor need never be turned." Bellport v. Harder, 196 Kan. 294, 411 P.2d 725 (1966).

The only case similar to the one at bar which was called to the Court's attention is In re Carl, 38 F.Supp. 414 (D.C.Ark.1941). In this case the bankrupt filed her petition claiming no assets. The following day the bankrupt inherited certain realty which she attempted to claim as a homestead and exempt. The facts did not indicate when she moved onto the property, but the creditors urged that it was not until after filing the petition that the bankrupt acquired title to the property and the rights of the bankrupt must be determined as of the date the petition is filed.

This case was decided prior to the 1952 amendment to the Act which added the "except insofar as it is held to be exempt" clause to the paragraph after § 70(a) (8). However, as stated above, that amendment seems to be merely a clarification of what the law already was. The District Court stated that "[t]he Bankruptcy Act can give the trustee no greater rights than he would have under state law." (Citing 8 C.J.S. Bankruptcy § 199 at 668.) The Court then held that since the bankrupt was entitled to assert the right under state law, it could be asserted in the bankruptcy proceedings and allowed the claimed exemption.

In light of the foregoing, it is the determination of this Court that under the applicable provisions of § 70 of the Bankruptcy Act, and more specifically the after-acquired property by inheritance provision, the petitioner is entitled to assert his claim of homestead to the subject property. It is also the determination of this Court that under the facts as they exist, the petitioner is entitled to have the subject property set aside as exempt under the Kansas homestead provisions of both statutory and case law.

The order of the Referee denying Hamill a homestead exemption is therefore set aside, and the case is remanded to the Referee with the direction to allow the homestead exemption as claimed by the petitioner.