In the Matter of Russell Edward
**DOBBINS** and Iona Fern
Dobbins, Bankrupts.
Nos. 21364–B–2, 21365–B–2.

United States District Court,
D. Kansas.
Feb. 14, 1973.

———◆———

Leander P. Hamilton, Hutchinson, Kan., for bankrupts.

David G. Arst, Wichita, Kan., for trustee.

## MEMORANDUM ORDER

THEIS, District Judge.

The Fourth National Bank of Wichita, Kansas, one of the creditors of the bankrupts in the captioned cause, has petitioned this Court for review of an order of the Referee in Bankruptcy denying its reclamation petition seeking recovery of the sales proceeds of the bankrupts' tractor truck, which stands in substitution for the vehicle. The effect of this order was to deny the Bank the status of a secured creditor, as more fully set forth below. The Court notes that the question is properly before the Court and that jurisdiction is present to resolve the issue.

■ Under Bankruptcy Gen.Order 47, 28 U.S.C.A., and the applicable decisions of the federal courts, the scope of review by this Court of a Referee's report and order is rather narrow. The Court is bound to accept the Referee's findings of fact unless they are clearly erroneous. Bankruptcy Gen.Order 47, 28 U.S.C.A.; See e. g., Moran Brothers, Inc. v. Yinger, 323 F.2d 699 (10th Cir. 1963); In the Matter of Hamill, 317 F.Supp. 909 (D.C.Kan.1970). The following findings of fact made by the Referee are not clearly erroneous and are accepted as correct by this Court after a complete review of the record:

1. The 1966 Ford tractor truck in question was purchased as a used vehicle by bankrupts from Price Auto Service Company, Wichita, Kansas, on June 26, 1970. As a part of the transaction, bankrupts executed and delivered to Price Auto an installment note in the sum of $7,522.56 and a security agreement. The security agreement provided that the rights and remedies of the parties were to be determined according to the laws of Kansas.

2. In consummating the sale on June 26, 1970, Price Auto delivered to bankrupts a Kansas certificate of title which had been assigned on the reverse side by the former owner, C. E. Short & Sons, to Price Auto, and by the latter to bankrupts. The reassignment by Price Auto contained a notation that the vehicle was subject to a lien in favor of Fourth National. Six days later, on July 2, 1970, the security agreement and installment note were assigned to the Bank by Price Auto.

3. Commencing July 3, 1970, the vehicle was operated by bankrupts under the terms of a lease agreement executed on that date with the Hahn Truck Line, Inc. of Oklahoma City, Oklahoma. The agreement designated bankrupts as the owners and operators of the tractor truck and the Hahn Company as the lessee-carrier. Until July 13, 1971, the vehicle was driven by bankrupts as independent contractors pursuant to said agreement. Although the bankrupts operated the vehicle in interstate commerce, traversing Kansas and some twenty-one other states, the home location for the truck when not in operation was at all times in Hutchinson, Kansas, the city of the bankrupts' residence, where its assignment for contract hauling was controlled by the Hutchinson branch of the Hahn concern.

4. The bankrupts did not apply for registration of the vehicle with the Kansas Division of Motor Vehicles and no Kansas certificate of title was ever issued displaying any lien of any secured party. On August 31, 1970, the Bank advised them by letter that Kansas law required them to register the vehicle within ten days following the date of purchase. In reply, bankrupt Iona Fern Dobbins advised the Bank that the tractor had been registered in Oklahoma on July 28, 1970, because "Hahn's head office is in Oklahoma City [Oklahoma]."

5. By letter of the Oklahoma State Tax Commission dated September 23, 1970, the Bank ascertained that the vehicle was registered in Oklahoma in the bankrupts' name and that it was shown to be free from liens or other encumbrances.

6. In November of 1970, and in compliance with the Bank's request, bankrupts executed and furnished a financing statement showing an assigned security interest in the vehicle as being held by Fourth National. The financing statement was filed with the County Clerk of Oklahoma County, Oklahoma, on November 17, 1970.

7. On June 11, 1971, the Bank inquired of bankrupt Russell Dobbins as to the availability of the Oklahoma title for the endorsement of its lien thereon. It was advised that the title was in Hahn's possession. By letter dated July 13, 1971, Hahn advised the Bank that the vehicle was no longer leased to it and that it no longer held the Oklahoma title. At no time was the lien of any secured party endorsed on the Oklahoma title.

8. Bankruptcy intervened with the filing of the Dobbins' voluntary petition on September 8, 1971.

9. The vehicle was sold by the trustee for an amount sufficient to cover Fourth National's unpaid indebtedness, and the funds are now in the trustee's hands.

Since the above findings of fact are uncontroverted, the issue presented is solely one of law. This being so, no presumption of correctness applies to the Referee's conclusions of law and the same cannot be approved without this Court's independent examination and determination of the law. Solomon v. Northwestern State Bank, 327 F.2d 720 (8th Cir. 1964); In re Hamill, 317 F. Supp. 909 (D.Kan.1970).

Both the trustee and the Bank filed briefs with the Referee addressed to the issue of whether the Bank had properly perfected its security interest. The trustee argued that since the "chief place of business" of the bankrupts was at all times pertinent in Kansas, K.S.A. § 84–9–103(2) required that the perfection be in accordance with the law of Kansas. Furthermore, the trustee contended that since the truck had been certificated in Kansas, K.S.A. §§ 84–9–103(4) and 84–9–302(3)(b) & (4) were controlling, and that the only proper method of perfection was by notation of the lien on the Kansas certificate of title in accordance with K.S.A. § 8–135(c)(5). Since a current Kansas certificate of title had never been issued noting the Bank's lien thereon, the trustee maintained that the Bank's security interest was unperfected and that he therefore prevailed in his § 70c status as a hypothetical lien creditor under K.S.A. § 84–9–301(1)(b) & (3). The Bank argued that the "chief place of business" of the bankrupts, as that term is used in K.S.A. § 84–9–103(2) and 12A O.S.A. § 9–103(2), was in Oklahoma City, Oklahoma, where Hahn's home office was located, and therefore that Oklahoma law controlled perfection of its security interest. Since the Bank had perfected its security interest in conformity with Oklahoma law, the Bank claimed that it should prevail over the trustee's rights. Both parties agree that the truck is equipment of the nature referred to in K.S.A. § 84–9–103(2), since it was purchased for use in interstate business; that the Bank had perfected its security interest in the truck in conformity with Oklahoma law; that there were no Kansas or Oklahoma cases directly in point; and that the question before the Referee solely involved interpretation of the relevant statutory sections.

The Referee held an evidentiary hearing and entered his memorandum opinion on October 11, 1972, wherein he essentially adopted the trustee's reasoning in denying the Bank's reclamation petition. The Referee found that the truck was title certificated in Kansas pursuant to K.S.A. § 8–135(c), and since the security interest was never noted on a Kansas certificate as required by K.S.A. § 8–135(c)(5), it was not properly per-

fected under K.S.A. § 84–9–302(3)(b) & (4), and the trustee prevailed. In conclusion, the Referee held:

> "In sum then, the truck was title certificated in Kansas and the only fair construction of the facts is that the chief place of the debtors' interstate business operation of the vehicle was Hutchinson, Kansas. Kansas law controls and the only manner Fourth National could have perfected its lien was to have it noted on the face of the title as Kansas law requires. . . . The steps taken with intent to perfect the lien in Oklahoma were completely unavailing. The laws of that state have no bearing on the rights of the parties to this controversy."

In its petition for review, the Bank claims that the Referee erred in: (1) holding that the bankrupts' "chief place of business" was in Hutchinson, Kansas; and (2) holding that the truck was covered by a Kansas certificate of title as contemplated by K.S.A. § 84–9–103(4). The Bank therefore contends that the Referee's order should be reversed. The Referee certified the question presented as being:

> "[w]hether under the factual circumstances the claimed lien rights of Fourth National are to be determined according to the laws of Oklahoma or the laws of Kansas."

The Court agrees with the Referee's conclusion that Kansas law controls perfection of the Bank's security interest, and it affirms the Referee's order, but for different reasons than stated therein.

■ Although Kansas law generally controls the perfection of security interests in all property located within this state, K.S.A. § 84–9–103 sets forth special rules for certain highly mobile or intangible property. Subsection 2 is specifically designed to cover the perfection of highly mobile equipment such as the tractor truck involved herein which is used in interstate business. It provides, in pertinent part:

> "If the chief place of business of a debtor is in this state, this article governs the validity and perfection of a security interest and the possibility and effect of proper filing . . . with regard to goods of a type which are normally used in more than one jurisdiction (such as automotive equipment . . .) if such goods are classified as equipment. . . . Otherwise, the law (including the conflict of laws rule) of the jurisdiction where such chief place of business is located shall govern."

All parties agree that the bankrupts' truck is equipment as that term is defined in K.S.A. § 84–9–109(2), and that it is highly mobile equipment normally used in more than one jurisdiction as contemplated by the above-quoted section. It is therefore clear that if the bankrupts' chief place of business was in Kansas K.S.A. § 84–9–103(2) would initially require perfection under Kansas Uniform Commercial Code, Article 9.

The phrase "chief place of business" is not defined in Article 9, but the Official U.C.C. Comment to 9–103(2) is enlightening in regard to the drafters' intent. Comment three thereof provides that:

> " '[c]hief place of business' does not mean the place of incorporation; it means *the place from which in fact the debtor manages the main part of his business operations. That is the place where persons dealing with the debtor would normally look for debtor information, and is the appropriate place for filing.*" (Emphasis added.)

■ The purpose of this section is to provide a simplified uniform method by which creditors can give notice of their interests in equipment located in more than one jurisdiction. In its absence, a creditor would be burdened with the onerous duty of perfecting his interest in an innumerable number of states, and a would-be creditor would similarly be required to unearth all states in which the equipment might have been located

and search the records for previously recorded interests. In light of the section's intent, the Referee was clearly correct in holding that the bankrupts' chief place of business was in Kansas. The bankrupts at all times resided and conducted their business affairs in Hutchinson, Kansas, where the truck was garaged when not in interstate travel. Absolutely the only connection of the bankrupts with the State of Oklahoma was the location of the lessee Hahn's home office therein. Since the bankrupts were independent contractors rather than employees of Hahn, and they had no financial interest in Hahn's business other than indirectly as a result of their leasing arrangement, it simply could not be said that a debtor would look to Oklahoma for evidence of a security interest in the truck.

In accordance with K.S.A. § 84–9–103(2), Kansas law would therefore normally control the method of perfection of the Bank's lien, unless the transaction fit within the limited exception contained in subsection (4) thereof. That subsection provides:

> "Notwithstanding subsection (2) . . ., if personal property is covered by a certificate of title issued under a statute of this state or any other jurisdiction which requires indication on a certificate of title of any security interest in the property as a condition of perfection, then the perfection is governed by the law of the jurisdiction which issued the certificate."

Although the bankrupts had registered the truck in Oklahoma and obtained an Oklahoma certificate of title, the Bank did not contend that subsection (4) required the application of Oklahoma law, which clearly did not require notation of security interests on certificates of title issued therein. King-Godfrey, Inc. v. Rogers, 157 Okl. 216, 11 P.2d 935 (1932), and Oklahoma Comment to 12A O.S.A. § 9–103(4). It was therefore entirely irrelevant whether an original Kansas certificate had been issued as contemplated by subsection (4), since

subsection (2) already directed the application of Kansas law to the perfection of the Bank's lien. The only remaining issue was the method which Kansas law provided for that perfection, which in turn required the determination of whether an original Kansas certificate of title had in fact been issued.

If an original Kansas certificate of title had been issued for the bankrupts' truck, section 84–9–302(3)(b) & (4) exempted the perfection of the Bank's security interest from the general filing provisions of Article 9, and required the lien's notation on the certificate as the only acceptable method of perfection. Otherwise, the Bank would be required to perfect its interest in conformity with the filing provisions of § 84–9–401, which in the case of equipment requires that a security agreement be filed with the office of the Secretary of State, § 84–9–401(c).

The Referee held that the Bank could only have perfected its security interest by noting it on an original Kansas certificate of title, since a Kansas certificate had been issued for the bankrupts' truck; i. e., the original certificate assigned to them by Price Auto after the consummation of the sale. He therefore held that § 84–9–302(4) and § 8–135(c)(5) controlled the perfection. This Court cannot agree with the Referee's reasoning and conclusion.

There is no question but that the bankrupts' truck was covered by a Kansas certificate of title when it was sold to them, and that they should have registered the vehicle in Kansas and obtained an original certificate in their name, § 8–135(b). Had they acted in accordance with the Kansas Registration of Motor Vehicles law and obtained an original certificate, the Bank's lien would automatically have been noted thereon and its interest would have been perfected, § 84–9–302(4). Similarly, if the certificate had been issued without notation of the Bank's lien, it would have been required to obtain possession of the certificate, and submit it and an application for mortgage title to the mo-

**146**

tor vehicle department in order to perfect its interest, § 8–135(c)(5). The bankrupts did not register the vehicle in Kansas, however, but rather, obtained an Oklahoma certificate of title.

 Under the circumstances, the Bank could have obtained notation of its lien on an original Kansas certificate of title only if it had forced the bankrupts to register the vehicle in Kansas. This Court does not believe that the Kansas Legislature intended to place such a burden on creditors when it promulgated §§ 84–9–302(4), and 8–135(c)(5). Placing such a duty on creditors would unnecessarily subject the perfection of their interests to the whims of uncooperative debtors, and would defeat the Uniform Commercial Code's purpose of placing perfection solely within the power and prerogative of the creditor. This Court therefore interprets § 84–9–302(4) as requiring notation of a security interest on a certificate if, and only if, a debtor has registered a vehicle and obtained an original Kansas certificate of title.

The Court's reading of § 84–9–302(4) does not benefit the creditor Bank in this instance. Once the bankrupts registered the truck in Oklahoma and obtained a certificate of title therein, the certificate assigned to the bankrupts by Price Auto became a nullity. Since the bankrupts did not present it to the Kansas Motor Vehicle Department and obtain a Kansas certificate in accordance with § 8–135(b), it in no way imparted notice of the Bank's lien to third party creditors. The parties were therefore in the same position as if the vehicle had never been certificated in Kansas. The Bank's lien was consequently not exempted from the Article 9 filing provisions by § 84–9–302(4), and the perfection of the Bank's lien was subject to the filing provisions of § 84–9–401, which required filing of the financing statement with the Secretary of State pursuant to subsection (c) thereof. Since the Bank did not comply with that section, its security interest was unper-

fected, and the Referee properly ordered that the trustee prevailed. The Referee's order denying the Bank's reclamation petition is therefore affirmed.