**In the Matter of Joseph Mervail O'FFILL and Jean Marie O'Ffill, Bankrupts.**

**Nos. 22532–B–4, 22533–B–4.**

United States District Court,
D. Kansas.

June 5, 1973.

**346**

Robert J. Roth, U. S. Atty., James A. Pusateri, Asst. U. S. Atty., Kansas City, Kan., Michael B. Andolina, Trial Atty., U. S. Dept. of Justice, Tax Div., Washington, D. C., for petitioner.

Joseph Cohen, of Cohen & Cohen, Kansas City, Kan., for bankrupts.

## MEMORANDUM AND ORDER

O'CONNOR, District Judge:

The United States has petitioned this court for review of an order of the referee in bankruptcy sustaining the bankrupts' Application for Determination of Dischargeability of Debt. The effect of this order was the elimination of a debt owing from the bankrupts to the United States by virtue of an assessment of federal tax liability made against them pursuant to Section 6672 of the Internal Revenue Code of 1954 (26 U.S.C.A. § 6672).

Two questions are presented for our determination:

1. Did the bankruptcy court have jurisdiction to determine the dischargeability of the taxes or penalties in question, since the United States did not file a claim in the bankruptcy proceeding?

2. Did the bankrupts, as responsible officers of Craddock Uniforms, Inc., *wilfully* fail to withhold, account for, any pay over the tax for which they were assessed a penalty equal to the tax under Section 6672 of the Internal Revenue Code of 1954? This necessarily involves the question as to whether or not the penalty assessed against the bankrupts under Section 6672 of the Internal Revenue Code of 1954, is a tax excepted from discharge under Section 17a(1)(e) of the Bankruptcy Act, 11 U.S.C.A. § 35.

Under Bankruptcy Gen. Order 47, 28 U.S.C.A., and the applicable decisions of the federal courts, the scope of review by a district court of a decision by the referee is rather narrow. The court is bound to accept the referee's findings of fact unless they are clearly erroneous. See *e. g.* Moran Brothers, Inc. v. Yinger, 323 F.2d 699 (10th Cir. 1963); Washington v. Houston Lumber, 310 F.2d 881 (10th Cir. 1962); In the Matter of Hamill, 317 F.Supp. 909 (D.C.Kan.1970). The facts giving rise to this dispute are not materially controverted. The following findings by the

referee are found not to be clearly erroneous and are accepted by this court:

1. In December, 1966, the principals resigned and Joe M. O'Ffill was designated as Chief Executive Officer and President of Craddock Uniforms, Inc. (Craddock). O'Ffill had invested $55,000 and was the sole owner of the stock of Craddock. On June 17, 1967, Joe M. O'Ffill was elected Chairman of the Board and Treasurer; his son Robert O'Ffill was elected President; and his wife Jean M. O'Ffill, Secretary. Jean M. O'Ffill received no salary as Secretary, and assisted in the operation of the business as a part-time, non-paid clerk. The operation and management of the business was conducted by Joe M. O'Ffill.

2. Craddock was engaged in the manufacture and sale of specialty uniforms, such as band uniforms to high schools, colleges, universities, lodges and similar organizations and institutions throughout the United States.

3. When Joe M. O'Ffill obtained control of Craddock, the company was in "shakey" financial condition and the accounts receivable were already assigned to The First National Bank and Trust Company of Salina, Kansas (Bank). The accounts receivable financing arrangement with the Bank permitted Craddock to borrow up to seventy percent of accounts receivable filed with the Bank, with an initial credit limit of $100,000, which was later increased to $150,000. Money received from accounts receivable went into a collateral account at the Bank from which it was disbursed into a general account, a payroll account and an imprest account. In the financing arrangement there was a sixty percent guarantee from Kansas Development Credit Corporation, and a ninety percent Small Business Administration guarantee.

4. All sales by Craddock were made on a deferred basis. When the accounts were received, they were deposited with the Bank.

5. The money deposited by Craddock in the collateral account at the Bank was for the use of Craddock as long as it maintained the proper margin in the collateral account.

6. The financial position of Craddock appeared to be improving in the summer of 1967.

7. The Bank in Salina, due to the lag in the payment of accounts receivable (it was later learned resulting from the unauthorized pledging of accounts by the sales representative Ferdinandi-Luna in California) became uneasy about its credit line with Craddock and the cashier John Norton, deeming the Bank insecure, advised Mr. O'Ffill, about the middle of October, 1967, the Bank would pay no checks which it did not approve in advance of delivery.

8. A number of checks written by Craddock were turned down, including some payroll checks which were later honored by the Bank; this occurred between October 13, and October 25, of 1967. There were also some checks honored that had been turned down for suppliers of shakos (headgear for band uniforms) and which were later honored by the Bank in order that Craddock could complete the order and receive payment on the accounts receivable involved for band uniforms which were not complete without the headgear. Checks which would improve the position of accounts receivable were honored by the Bank as it was to the Bank's interest to have the accounts receivable paid.

9. The bookkeeper for Craddock prepared checks for the regular quarterly deposit of federal withholding and F. I. C. A. taxes. In late October, 1967, the Bank closed all the accounts except the imprest account; after this was done, Mr. Norton, cashier of the Bank, on October 30, handed Mr. O'Ffill check No. 2294, dated October 2, 1967, in the amount of $3,716.98, which had been deposited with the Bank earlier that month in payment for September, 1967,

federal withholding and F. I. C. A. deposits. O'Ffill did not know this check had not been honored. O'Ffill was asked to write a replacement check on the imprest account which was the only account left open to cover check No. 2294. This was done and that check was paid.

10. In the early part of November, Mr. O'Ffill verified by a trip to California, that the sales representative in California had pledged some of Craddock's accounts to a bank in Fresno, California. They were accounts Craddock had previously pledged to the Bank of Salina. O'Ffill and the Bank had been depending on these accounts to improve Craddock's credit position and maintain operation of the business. O'Ffill notified the Bank in Salina of the action of the California sales representative and the Bank then refused to advance any more credit. At this point, it was agreed by O'Ffill and the Bank that the Craddock plant would be shut down when the work in process was finished.

11. The California sales representative for Craddock, Ferdinandi-Luna, was not authorized to pledge or assign Craddock accounts.

12. On November 13, 1967, the bookkeeper at Craddock calculated that $8,662.14 was due for withholding and F. I. C. A. taxes, and at the direction of O'Ffill, prepared federal depository receipt, check No. 1139, in the amount of $3,220.62, payable to First National Bank and Trust Company on the imprest account; check No. 1140 to the First National Bank and Trust Company, in the amount of $2,905.92, on the imprest account; check No. 1141, in the amount of $2,535.60, and requested the Bank to honor them. The Bank refused payment because of Craddock's overdraft position having exceeded the limitations on the accounts receivable financing arrangement with the Bank. At this point, neither Craddock or O'Ffill had any funds with which to pay the withholding taxes.

13. Following the decision to close down the Craddock plant after the work in process was completed, arrangements were made to advance Mr. O'Ffill $1,000 to be used as expenses in an effort to sell Craddock. The effort was unsuccessful and on December 8, 1967, a proceeding under Chapter XI of the Bankruptcy Act was filed by Craddock in this court. Craddock was unable to have a plan confirmed under Chapter XI, and was adjudicated a bankrupt.

14. Under the provisions of § 6672 of the Internal Revenue Code of 1954, the Internal Revenue Service assessed a penalty against Joe M. O'Ffill and Jean M. O'Ffill for failure to pay income tax withholding and F. I. C. A. taxes accruing during the operation of the business of Craddock for the period of October and November of 1967. A federal tax lien was filed with the Register of Deeds of Johnson County, Kansas, on December 1, 1971, against Joe M. O'Ffill and Jean M. O'Ffill, in the amount of $9,082.68, plus interest and penalties. The total obligation that was claimed due by the Internal Revenue Service as of the filing of the Application to Determine Dischargeability was approximately $11,000.

15. The United States did not file a claim in this proceeding.

16. The tax is unpaid and there has been no contest and adjudication prior to bankruptcy of the amount or legality of the tax by an administrative or judicial tribunal of competent jurisdiction as contemplated by § 2a(2A) of the Bankruptcy Act, 11 U.S.C. § 11.

17. The case was tried and the pleadings were treated as presenting the questions as to whether the failure on the part of O'Ffills to withhold and pay over the tax was willful and whether or not the penalty was a tax excepted from discharge under § 17a(1)(e) of the Bankruptcy Act.

18. Joe M. O'Ffill and Jean M. O'Ffill filed a voluntary petition in bankruptcy on January 4, 1972, listing the Internal Revenue Service as a creditor by reason of a claim under the penalty provisions of the Internal Revenue

Act arising out of the operation of Craddock and its failure to pay income tax, withholding and social security tax for October and November, of 1967, in the amount of $11,000.

19. On April 17, 1972, bankrupts filed an application for determination of dischargeability of this debt under the provisions of § 17 of the Bankruptcy Act, 11 U.S.C. § 35. In the application, it is contended that through the financing arrangement with the Bank, the Bank had control of the funds of Craddock and applied them to indebtedness due the Bank, and that O'Ffill did not wilfully fail to collect and pay over such tax. O'Ffills also take the position that the obligation claimed by the government is a penalty under § 6672 of the Internal Revenue Code, and not a tax, and therefore, is not excepted from discharge under § 17a(1)(e) of the Bankruptcy Act, 11 U.S.C. § 35.

20. The government filed an Answer asserting that the court lacks jurisdiction of the United States of America, because no proof of claim was filed in the bankruptcy proceeding and therefore, the government had not waived its sovereign immunity from suit. The Answer further asserted that the obligation in question is a tax properly assessed and not dischargeable under § 17 of the Bankruptcy Act, 11 U.S.C. § 35. In a pleading filed June 6, 1972, the government made the additional contention that the Application to Determine Dischargeability failed to state a claim upon which relief may be granted, since, pursuant to the express provisions of § 17a(1)(e) of the Bankruptcy Act, the taxes asserted against the bankrupt are non-dischargeable.

21. Notice of the hearing on the application to determine dischargeability of debt was given in the manner and form provided by law.

■ Inasmuch as the above findings of fact are not clearly erroneous, the issues presented for review are exclusively questions of law. No presumption of correctness applies to the referee's con-clusions of law; this court is required to make its own independent examination and determination of the law. In re Hamill, *supra.*

We first turn to the threshold question of jurisdiction. The referee held that the bankruptcy court had jurisdiction to determine not only the issue of dischargeability, but also the merits of the bankrupts' federal tax liability, despite the fact that the government had not filed a proof of claim in the proceedings or otherwise voluntarily submitted to the jurisdiction of the bankruptcy court.

Specifically, the referee found that the penalties imposed pursuant to Section 6672 of the Internal Revenue Code of 1954 (26 U.S.C. § 6672) were taxes and therefore were nondischargeable under the express provisions of Section 17(a)(1)(e). The government has no quarrel with this conclusion; but nevertheless questions the jurisdiction of the bankruptcy court in two aspects, namely:

1. There exists no waiver of sovereign immunity and the bankruptcy court could not determine the issue of dischargeability of federal taxes inasmuch as the United States had not filed a proof of claim or otherwise submitted to the court's jurisdiction;

2. Even if the bankruptcy court had jurisdiction to determine the dischargeability of federal taxes, the referee exceeded his authority by making a determination of the merits of the bankrupts' federal tax liability.

With respect to the bankruptcy court's jurisdiction to determine the issue of dischargeability, the referee stated:

"Prior to the 1966 Amendment [§ 17a(1) of the Bankruptcy Act—11 U.S.C. § 35(a)(1)] taxes were not dischargeable in bankruptcy. (The Act) was amended so as to permit the discharge of taxes legally due and owing more than three years before bankruptcy absent fraud, failure to file a return, and existence of a recorded tax lien. At the same time, amend-

ments were made to § 64(a)(4) and § 2a(2A) (of the Bankruptcy Act), removing the question of jurisdiction from § 64a, which pertains to priority of claims, to the section that pertains to jurisdiction, and enlarged the bankruptcy court's jurisdiction with reference to hearing and making a determination of questions arising as to the amount or legality of unpaid taxes under the circumstances set forth in the statute . . ." [p. 4C.]

Section 2a(2A) of the Bankruptcy Act enacted in 1966 [11 U.S.C.A. § 11a(2A)], granted to bankruptcy courts jurisdiction to:

"Hear and determine, or cause to be heard or determined, any question arising as to the amount or legality of any unpaid tax, whether or not previously assessed, which has not prior to bankruptcy been contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction. . ."

■ We agree with the referee's conclusion that prior to the 1966 Amendment, debts for taxes were not effected by a discharge in bankruptcy. The amendment was obviously intended to vest in the bankruptcy court jurisdiction to determine the dischargeability in bankruptcy of debts for taxes which became legally due and owing more than three years preceding bankruptcy.

The cases cited by the referee support this interpretation, as does 3A Collier, 14th Ed., ¶ 64.407, at p. 2234, which states:

"The jurisdictional grant under the first part of § 2a(2A) to hear and determine any question arising as to the amount or legality of any unpaid tax is limited by two factors only. First of all the tax must not have been paid . . . Secondly, the disputed tax item must not have been contested and adjudicated prior to bankruptcy. Thus the immaterial elements *not affecting the court's jurisdiction,* include the following: (1) whether or not an assessment was made before bankruptcy; (2) whether the assessment was made by a judicial or administrative tribunal; (3) whether the tax arose prior to or after bankruptcy . . .; (4) and *whether or not a proof of claim is filed for the tax.* Actually, if a proof of claim has been filed the court has independent power under Section 57 to determine its validity and amount before allowing it." [*emphasis added*]

We note that the 1966 amendment to 11 U.S.C. § 35(a), was explained in House Report No. 687, 89th Congress, 1st Session, as follows:

"The Committee recognizes the fact that different types of taxes present different problems to tax collectors. The accuracy of some types of tax returns can be determined immediately. Others, like income taxes, require some time to audit. Rather than attempt a classification of the enormous variety of Federal, State, municipal, county, city, village, and various district taxes for the purpose of establishing varying limits on dischargeability, the committee set a three-year period for all taxes . . . The fact that tax claims for the three years preceding bankruptcy will not be discharged should serve to discourage recourse to bankruptcy as a facile devise for evading tax obligations. At the same time, it will become feasible for an industrious debtor to re-establish himself as a productive and taxpaying member of society. . ."

Also noteworthy are the 1970 Amendments to the Bankruptcy Act, contained in the New Dischargeability Law [Public Law 91–467], effective for cases filed after December 19, 1970. The New Dischargeability Law amended § 2a(2), § 38(4), § 14, and § 17 of the Bankruptcy Act, to give courts of bankruptcy jurisdiction to determine dischargeability of debts, and to render judgment thereon.

We believe the referee's reliance upon the rationale expressed in In re Savage, 329 F.Supp. 968 (D.C.Cal.1971); In re Michaud, 317 F.Supp. 1002 (D.C.W.D.

Penn.1969); and In re Braund, 423 F.2d 718 (9th Cir. 1970), is well founded. Those decisions emphasized that in amending Section 17 of the Bankruptcy Act, and granting jurisdiction to the bankruptcy court to determine the dischargeability of old tax debts, Congress intended to enhance the individual's opportunity to financially rehabilitate himself and achieve a fresh start.

■ This court is satisfied and now holds that the bankruptcy court had jurisdiction to determine the penalties assessed against the bankrupts were in fact taxes within the purview of § 17(a)(1)(e) of the Bankruptcy Act and therefore were excepted from discharge. Jurisdiction of the bankruptcy court was in no way affected by the government's failure to file a proof of claim in the proceedings.

The government's further contention —that even though the bankruptcy court may have had jurisdiction to determine dischargeability, the referee exceeded his authority in going further and deciding the merits of the bankrupts' tax liability—presents a more difficult problem.

We are directed to no court which has ruled on this precise question, nor do we find any authority to support the exercise of jurisdiction as to the bankrupts' liability where no proof of claim has been filed. None of the cases cited by the bankrupts go beyond the primary issue of the bankruptcy court's jurisdiction to determine dischargeability.

Before Section 2a(2A) of the Bankruptcy Act [11 U.S.C. § 11a(2A)] was enacted in 1966, the Senate Judiciary Committee, in reporting favorably on the proposed bill, stated:

"Your committee also agrees with the amendment in the bills, which, in effect, moves the provision relating to the statutory authority of bankruptcy courts to hear and determine tax disputes from the section of the Bankruptcy Act relating to the priority of unsecured tax claims, to the provision of the Act relating to the jurisdiction of bankruptcy courts. This committee understands that *this amendment makes no change in present law under which a bankruptcy court cannot adjudicate the merits of any claim, including a federal tax claim, which has not been asserted in the bankruptcy proceeding by the filing of a proof of claim.*" Sen.Rept. 999, 89th Cong. (1966). [*emphasis added*]

■ After carefully studying the various amendments to the Bankruptcy Act previously referred to herein, as well as their legislative history, we are unable to say that they were intended to operate as a waiver of sovereign immunity other than as to the jurisdiction of the court of bankruptcy to determine dischargeability. It is clear that waiver of immunity may not be found by implication in statutory provisions that omit all reference to the sovereign. Danning v. United States, 259 F.2d 305 (9th Cir. 1958). In our view, the amendments, having as their purpose the elimination of old tax debts, effectively waived immunity with respect to the dischargeability of debts for taxes due and owing more than three years preceding bankruptcy. The same cannot be said as to the jurisdiction of the bankruptcy court to adjudicate the merits of a Federal tax claim, where the government has not submitted to the jurisdiction of the court by filing a proof of claim. Section 2a(2A) does grant the bankruptcy court jurisdiction to hear and determine any question arising as to the amount and legality of any unpaid tax which had not been judicially or administratively determined by a tribunal of competent jurisdiction. This statute, however, presupposes that the merits of the tax claim have been drawn into issue by the filing of a proof of claim by the government in the bankruptcy proceeding.

In light of what has been said, we need not consider the second question certified for review. The court affirms and adopts the conclusion of the referee that he had jurisdiction to determine the penalties assessed were in fact taxes, and thus nondischargeable. The ref-

eree's conclusion as to the bankrupts' liability, however, was erroneous and the order determining there is no debt owing from bankrupts to the United States by virtue of the assessment made against them under § 6672 of the Internal Revenue Act of 1954, must be set aside and vacated.

It is so ordered.